UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:98-cr-0038-JMS-MJD |
| ) | |
| ANTHONY SPRADLEY, ) | |
| Defendant. ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
MOTION FOR COMPASSIONATE RELEASE**

The Court should deny Anthony Spradley's motion for compassionate release.

Spradley is currently in the custody of the Bureau of Prisons (BOP) at the United States Penitentiary in Leavenworth, Kansas. Spradley filed a motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A). (D. 98.) He contends that his pre-*United States v. Booker*, 543 U.S. 220 (2005) mandatory guidelines sentence coupled with his post-sentencing rehabilitation "creates extraordinary and compelling reasons for compassionate release." (*Id.* at 9.)

But neither constitute an extraordinary or compelling reason for release. This Court should deny Spradley's motion.

1

# BACKGROUND

## *Spradley's Criminal Conduct*

From 1993 to 1998, Spradley was the organizer and leader of a "large" drug and money laundering conspiracy. (PSR ¶ 4); *United States v. Thompson*, 286 F.3d 950, 956 (7th Cir. 2002). The Seventh Circuit, on direct appeal, summarized the facts of Spradley's crime as follows:

> Defendants Willie Boddie, Stephanie Johnson, Dennis Jones, Anthony Spradley, Anthony Thompson, Ellis Walker, and Mark White were charged with crimes arising out of their participation in a large, Indianapolis-based drug conspiracy. The conspiracy reigned from 1992 to 1997 and involved the trafficking of hundreds of kilograms (kilos) of cocaine, the accumulation and laundering of substantial profits, and two short-lived business pursuits. The conspiracy seemed invincible until November 1996, when Marcus Willis, working on behalf of law-enforcement officials, arrived on the scene. He worked for law enforcement for approximately eight months (through June of 1997) until he was murdered in one of the defendant's vehicles. Not long after this murder, charges were filed against each of the defendants and several others . . .

*Thompson*, 286 F.3d at 956. In sum, Spradley was responsible for between 500-1,000 kilograms of cocaine and more than $11.54 million in money laundering. (PSR ¶ 18.)

In 1997, Spradley aided and abetted a murder. As the Seventh Circuit explained:

> The district court found that Spradley knew Willis had been murdered to keep him from relaying any more information to

> law-enforcement authorities. It based its findings, in part, on evidence that Spradley knew about Willis's informant activities. Coconspirator Keith Cork testified at trial that several days before Willis's murder, he and Spradley confronted Willis about rumors that he had been talking to the police. Cork's testimony was corroborated by a statement to the same effect made by Willis to police on June 20, 1997, approximately ten days before the murder. In addition, Cork testified that Spradley, in a meeting about Willis's informant activities attended by several conspiracy members, said that he would not let anyone hurt them.
>
> We believe that this evidence sufficiently supports the conclusion that it was reasonably foreseeable to Spradley that Willis would be murdered with malice aforethought. Spradley knew that Willis was likely to be murdered in an attempt to prevent him from further exposing the conspiracy, which satisfies the test of reasonable foreseeability. Therefore the district court did not err by applying the First–Degree Murder Guideline to Spradley.

*Thompson*, 286 F.3d at 959.

Nor was this the only violence associated with the organization. Attempts were made by others to rob Spradley who in turn, kidnapped, held at gunpoint, and fired shots at these individuals. (PSR ¶¶ 12-13.) One individual was kidnapped in Georgia at gunpoint, brought to Indianapolis, and held for two days for not providing "good quality cocaine." (PSR ¶ 14.) Another individual failed to repay Spradley, and an argument ensued that resulted in gunshots being fired at the residence. (PSR ¶ 15.)

### *Charges, Conviction, Sentencing, and Appeal*

For his part, Spradley was charged with: conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C.

§§ 841(a)(1) & 846 (Count 1); murder of an informant to prevent communication, in violation of 18 U.S.C. § 1512(a)(1)(C) (Count 2); murder of an informant with intent to retaliate, in violation of 18 U.S.C. § 1512(a)(1)(B) (Count 3); use of a firearm during a commission of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 4); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(B), (h) (Counts 7 and 8); conducting financial transactions with proceeds from unlawful activity, in violation of 18 U.S.C. § 1956 (Counts 10, 11, 14-17, 19, and 20); and engaging in monetary transactions involving criminally derived property, in violation of 18 U.S.C. § 1957 (Counts 23-25.) (D. 1.)

Spradley proceeded to trial and in September 1999, a jury returned guilty verdicts on Counts 1, 7, 8, 14-17, 19, 20, and 23-25. (Crim. D. 92.) A verdict of not guilty was returned on Counts 2-4, 10, and 11. (*Id.*)

Spradley's total offense level was found to be 47 resulting in a guideline range of life based on trafficking more than five kilograms of cocaine and the murder cross-reference, under U.S.S.G. § 2D1.1(d)(1). (PSR ¶¶ 39-44.) The Court sentenced Spradley to life imprisonment. (D. 1.)

Spradley appealed, but the Seventh Circuit affirmed his conviction and sentence, upholding the application of the drug offense murder cross-reference. *Thompson*, 286 F.3d 950.

### *Spradley's Prison Disciplinary Record and Re-entry Plan*

Spradley's prison disciplinary records show eight infractions, one as recent as November 18, 2020 where Spradley was found in possession of a hazardous tool. His other infractions include phone abuse—disrupting monitoring in 2017 and 2009; exchanging money for contraband in 2009; possessing intoxicants in 2000; possessing staff clothing in 2000; and engaging in sex acts in 2000. (*See* Exhibit A, BOP Disciplinary Record.)

Spradley has taken several educational courses during his incarceration. (D. 214 at 23, 59-61.)

Spradley has not stated where he will live or what employment he will seek once released, he only provided letters of support and offer letters from businesses claiming they would hire him once released. (D. 214 at 21-23; 49-47.)

### *Motion for Compassionate Release*

On June 15, 2021, Spradley, through counsel, filed this motion for compassionate release. He contends that his mandatory minimum life sentence is no longer mandatory coupled with his post-sentencing rehabilitation "creates extraordinary and compelling reasons for compassionate release. (D. 214.)

### **DISCUSSION**

As a general rule, a sentence of imprisonment is "final." 18 U.S.C.

§ 3582(b). Thus, it "may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (citing § 3582(b)).

Prior to enactment of the First Step Act in 2018, federal judges could grant compassionate release only upon a motion by the Bureau of Prisons. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). But the First Step Act "created a judicial power to grant compassionate release on a prisoner's own request," following the prisoner's exhaustion of administrative remedies. *Id.* The statute, in pertinent part, now reads:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy

6

statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to delineate what constituted "extraordinary and compelling reasons." 28 U.S.C. § 994(t). The Commission did so, enacting a policy statement in the guidelines regarding the compassionate release statute. U.S.S.G. § 1B1.13.

However, "the Sentencing Commission has not updated its policy statements to implement the First Step Act." *Gunn*, 980 F.3d at 1180 (noting that the Commission cannot do so because it lacks a quorum). Thus, at this point, there is no "policy statement 'applicable'" to prisoner-initiated applications for compassionate release. *Id.*

*Gunn* rendered existing policy statements non-binding. So, when reviewing compassionate release motions, "District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review." *Id.* at 1181. As for the policy statements, "the Commission's analysis can guide [the court's] discretion without being conclusive." *Id.* at 1180.

## I. Spradley's Life Sentence Does Not Create an Extraordinary and Compelling Reason for Release

Spradley's primary argument is that his life sentence creates an extraordinary and compelling reason for his release. (Dkt. 214.) But several

7

problems exist with this claim. One, while *Booker* rendered the guidelines advisory (as opposed to mandatory when Spradley was sentenced), Spradley's guideline range remains the same. Two, Spradley relies on a repetitive, and incorrect, attack against the murder cross-reference. Three, Spradley relies on district court cases finding stacked 18 U.S.C. § 924(c) can be extraordinary and compelling reasons, but the Seventh Circuit has recently rejected such grounds—and, like there, *Booker* is not retroactive.

Spradley has offered no reason that his correct, guideline sentence—which has not been called into question by any precedent or statutory change—warrants an extraordinary or compelling reason for release. Instead, Spradley's claims are quite ordinary: A prisoner unhappy with his sentence. This Court should decline relief.

### A. If Sentenced Now, Spradley's Guideline Range Would Remain Life

As an initial matter, Spradley's claim is a guidelines claim—but his guideline range remains correct. If Spradley were sentenced today, his guideline range would be life—in fact, with an offense level of 47, he is four levels above the highest offense level possible. His sentence within that range is "presumed reasonable." *United States v. Shannon*, 518 F.3d 494, 498 (7th Cir. 2008) (citing *United States v. Haskins*, 511 F.3d 688, 695 (7th Cir. 2007)).

His claim is therefore facially incongruous. He asks the Court to find it extraordinary and compelling that he was sentenced at his correct guideline range (which remains correct), that is presumed reasonable. *Id.* This, quite apart from being extraordinary, is quite ordinary. This Court should decline to grant release in these circumstances.

### B. As the Seventh Circuit Held on Direct Appeal, the Application of the Murder Cross-Reference Was, and Is, Correct

Spradley first seeks to reduce his sentence loosely arguing that he was given the murder cross-reference under U.S.S.G. § 2D1.1(d)(1) "even though he was not the shooter." (D. 214 at 9.)

But that claim is neither correct nor viable here. To start, Spradley challenged this enhancement on direct appeal. *Thompson*, 286 F.3d at 959. And the Seventh Circuit rejected that claim, finding that the murder cross-reference was correctly applied. *Id.*

That precludes his substantive attack here. The "longstanding rule of federal practice" is that "a person who has raised an issue, and had it resolved by a federal court, cannot start from scratch on collateral review and ask the judiciary to proceed as if the first resolution had not occurred." *Peoples v. United States*, 403 F.3d 844, 847–48 (7th Cir. 2005) (citing *Messinger v. Anderson*, 225 U.S. 436, 444 (1912); *Roberts v. Cooper*, 61 U.S. 467, 481 (1858); *Himely v. Rose*, 9 U.S. 313 (1809)).

Spradley primarily reiterates his argument on direct appeal here. (D. 214 at 9.) Those claims are not viable here.

Regardless, the enhancement was correctly applied. The murder cross reference, under U.S.S.G. § 2D1.1(d)(1), applies when a defendant's relevant conduct includes the killing of a victim under circumstances that would constitute premeditated murder under 18 U.S.C. § 1111. *Thompson*, 286 F.3d at 957. On appeal, the Seventh Circuit found that the evidence sufficiently supported the conclusion that it was reasonably foreseeable to Spradley that Willis would be murdered with malice aforethought, thus, the district court did not err by applying this guideline to Spradley. *Id.* at 959.

Spradley's counterargument fails. He complains that he was not the shooter. (Dkt. 9.) But it is axiomatic that whoever "aids, abets, counsels, commands, induces or procures [a crimes] commission is punishable as a principle." 18 U.S.C. § 2. Here, Spradley clearly qualified for the enhancement. *Thompson*, 286 F.3d at 957.

The valid application of a guideline enhancement—equally valid today as it was when applied—does not constitute an extraordinary and compelling reason for compassionate release.

### C. Spradley's Pre-*Booker* Sentence Is Not an Extraordinary and Compelling Reason for Release

Next, Spradley claims that if sentenced today, post-*Booker*, his life-

10

sentence guideline would not be mandatory, and the Court could fashion a "parsimonious sentence in this case." (*Id.* at 9-10.)

But, in light of recent Seventh Circuit precedent, this claim is not compelling. To start, *Booker* is not retroactive. *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005).

And the Seventh Circuit recently held that a non-retroactive sentencing change is not an extraordinary and compelling reason. In *United States v. Thacker*, the Seventh Circuit held that the First Step Act's change to § 924(c)'s stacking provision didnot "constitute an extraordinary and compelling reason for a sentencing reduction." -- F.4th --, 2021 WL 2979530, *6 (7th Cir. 2021). The court held that § 3582(c)(1)(A) "cannot be used to effect a sentencing reduction at odds with Congress's express determination" that changes in the law under the First Step Act would "apply only prospectively." *Id.* at *3.

Here, Spradley relies on district court cases finding the First Step Act's changes to § 924(c) extraordinary and compelling. (Dkt. 214 pp. 11–16.) But those cases are incorrect in light of *Thacker*.

And, in effect, Spradley is advancing a claim based on the same logic as rejected in *Thacker*. He wants to benefit from a non-retroactive sentencing change that does not apply to him. But, like in *Thacker*, "Rationales along those lines cannot supply an extraordinary and compelling reason to reduce a

11

lawful sentence whose term Congress enacted, and the President signed, into law." *Id.* at *4. Thus, Spradley's argument cannot succeed here.

This Court should deny his motion for compassionate release.

## II.     In Addition, Spradley Remains a Danger to the Community

The policy statement outlined in U.S.S.G. § 1B1.13 of provides that the defendant must prove that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Under § 3142(g) courts are to to consider the nature and circumstances of the offense, the weight of the evidence against the person, the history and characteristics of the person, and the danger to any person or the community that would be posed by the defendant's release.

Spradley remains a danger to the community. He was the organizer and leader of the drug distribution business. (PSR ¶ 4.) He was tied to between 500-1,000 kilograms of cocaine and more than $11.5 million in money laundering. (PSR ¶ 28.) Spradley was also found to participate in discussions for murdering law enforcement informant Willis. (*Id.*) Willis was shot and killed by others associated with Spradley and Spradley participated in the cleanup of the vehicle Willis was shot in. (*Id.*) In addition, he also possessed numerous loaded firearms on his person and in his vehicles, homes, and residences. (PSR ¶ 8.) This drugs and guns combination was an inherent danger to the community.

And his release would pose a danger to the community. Spradley ran an extensive drug distribution ring from approximately 1990 to the time of his arrest. This organization produced between 500 to 1,000 kilograms of cocaine and more than $11.5 million in money laundering. (PSR ¶ 28.) Members of the organization, to include Spradley were found to routinely be in possession of loaded firearms on their person, in their vehicles and residences. (PSR ¶ 8.) In addition, Spradley was associated with a number of kidnappings, shootings, and murder of an informant during his time running this drug distribution ring. (PSR ¶¶ 4, 10, 12, 13, 14, 15, 22.)

The danger that he poses to the community at large is itself a sufficient basis to deny Spradley's motion.

### III. Finally, the 18 U.S.C. § 3553(a) Factors Countenance Against Spradley's Release

The factors set forth in 18 U.S.C. § 3553(a) likewise countenance against Spradley's release. The Court must first consider the nature and circumstances of the offense, along with the history and characteristics of the defendant. 18 U.S.C. § 3553(a). To recapitulate earlier arguments presented in this Response, the offense involves Spradley's running am multi-million dollar drug conspiracy operation in Indianapolis.

The second factor to consider under § 3553(a) involves the need for the sentence to reflect the seriousness of the offense and to provide just

punishment for the offense, the need to provide deterrence, and the need to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2). Which as provided above, Spradley was the leader and organizer of a large scale drug conspiracy and money laundering organization that included an array of violence and ultimately murder.

The third factor to consider under § 3553(a) involves the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Reducing the defendant's sentence to 300 months' imprisonment in this case would represent an unwarranted windfall for the defendant and remove his sentence from beyond the pale of the sentences imposed for similarly situated defendants (in other words, as noted above, similarly situation defendants sentenced now would still have a guideline range of life). While Spradley tries to compare himself to co-defendants in this case, Spradley's sentence includes the murder cross reference that others did not receive and some of those defendants were found responsible for smaller drug weights than Spradley, thus making them inapposite. This comparison lacks merit.

Spradley has not met his burden of proving that his release would not pose a danger to the community.

## CONCLUSION

This Court should deny Spradley's motion for compassionate release

because Spradley fails to provide an extraordinary and compelling reason to justify compassionate release.

                                                Respectfully submitted,

                                                JOHN E. CHILDRESS
                                                Acting United States Attorney

                    By:    s/Bradley A. Blackington
                             Bradley A. Blackington
                             Assistant United States Attorney
                             Office of the United States Attorney
                             10 West Market Street, Suite 2100
                             Indianapolis, IN  46204
                             Telephone: (317) 226-6333

## CERTIFICATE OF SERVICE

I certify that on September 2, 2021, a copy of the foregoing was filed electronically. Notice and service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

s/ Bradley A. Blackington
Bradley A. Blackington
Assistant United States Attorney
