**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

---

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **No. 98-cr-0038-JMS-MJD-01** |
| | ) | |
| **v.** | ) | **Hon. Jane E. Magnus-Stinson** |
| | ) | |
| **ANTHONY SPRADLEY** | ) | |

---

**DEFENDANT ANTHONY SPRADLEY'S REPLY IN SUPPORT OF HIS MOTION FOR COMPASSIONATE RELEASE**

For the first time in this case, the Court has the authority to decide whether ANTHONY SPRADLEY should die in prison. Mr. Spradley does *not* pursue the generalized argument that his life sentence, without more, is a sufficient condition to meet the extraordinary-and-compelling standard for compassionate release. Nor does he continue to argue that a change in law alone is sufficient. The Seventh Circuit's decision in *United States v. Thacker,* 4 F.4th 569 (7th Cir. 2021*)*, was decided during the pendency of Spradley's compassionate release motion. In light of *Thacker,* Spradley understands that our Circuit's precedent dictates that he cannot establish extraordinary and compelling reasons based solely upon a favorable, but nonretroactive change in law.[1]

*Thacker* does not doom Spradley's motion for relief, however. Compassionate release requires the Court to engage in an individualized analysis of the unique facts presented on a

[1] Though, Mr. Spradley continues to preserve this argument for appellate review.

case-by-case basis. Here, Mr. Spradley's extraordinary-and-compelling argument is threefold: (A) a life sentence is an extraordinarily harsh form of punishment, particularly for a drug offender who had never been imprisoned; (B) Spradley's life sentence is disproportionately punitive when compared to co-Defendant Mark White; and (C) Spradley's life sentence is particularly harsh given the victim's father's letter supporting release.

Simply stated: It is extraordinary that Spradley continues to serve a mandatory life sentence that is driven by a (technically applicable) guideline provision, where an arguably more culpable co-defendant's sentence was later reduced to 40-years' imprisonment. It is compelling that Spradley has undertaken a long, remarkable journey of reconciliation and restorative justice with the victim's father, resulting in a letter indicating that he does not oppose Spradley's release. Perhaps, these facts would not carry the day when considered in isolation. However, Spradley presents a unique combination of facts that *collectively* meet the extraordinary-and-compelling prong of the Court's analysis.

Mr. Spradley's disproportionate life sentence, his unique personal circumstances and efforts at atonement, when combined with Edward White's support letter, constitute extraordinary and compelling reasons to warrant a sentence reduction. Furthermore, Mr. Spradley's remarkable rehabilitation, the unwarranted disparity of his life sentence and the ongoing pandemic are § 3553(a) factors weighing in favor of his release. For the reasons that follow, ANTHONY SPRADLEY, by undersigned counsel MIANGEL C. CODY, respectfully submits this Reply in further support of his Motion for Compassionate Release.

## I. EXTRAORDINARY AND COMPELLING REASONS

In determining whether a sentence reduction under § 3582 is appropriate, the Court must first consider whether "extraordinary and compelling reasons" warrant a reduction. Then, the Court considers whether a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. §3582(c)(1)(A)(i); *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (explaining the two-step process for reviewing compassionate release motions); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). For this particular defendant, in this particular case, on these particular facts, Mr. Spradley meets both factors.

### A. A life sentence is an extraordinarily harsh form of punishment, particularly for a drug offender who had never been imprisoned.

A life sentence is categorically severe and extraordinary. It "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days." *Graham v. Florida,* 560 U.S. 48 (2010) (citing *Naovarath v. State*, 105 Nev. 525, 526, 779 P. 2d 944 (1989)). Short of a death sentence, a life sentence is the second most severe punishment in our justice system. A life sentence is particularly severe for a drug offender whose most serious prior conviction was a $2.00 gambling fine.

The Seventh Circuit has not definitively ruled whether a now-defunct ***life*** sentence may constitute an extraordinary and compelling reason for release pursuant to 18 U.S.C. §3582(c)(1)(A)(i). This ourt need not decide that issue today because Mr. Spradley's argument is that his comparatively disproportionate life sentence – when coupled with additional facts and circumstances – meets the standard for compassionate release.

**B. Anthony Spradley's Life Sentence is Disproportionately Punitive When Compared to Co-Defendant Mark White.**

**1. The government incorrectly characterizes the record.**

The government's response is largely based upon a mischaracterization of facts in this case. The government contends that "Spradley aided and abetted a murder." ECF No. 225 at 2. There is no support in the record for the government's errant factual assertion. The government did not charge Spradley with aiding and abetting a murder, the jury made no such finding and neither did this Court at sentencing. The Court found Willis's murder was reasonably foreseeable to Spradley for purposes of applying the murder-cross reference guideline. That finding was based upon assertions that Mr. Spradley was present when Willis's murder was discussed and that he participated in cleaning up a car after the murder occurred. The distinction is important. The government invites the Court to commit reversible error by making new factual findings at this late procedural juncture.

**2. Spradley's Sentence Is Disproportionately Punitive When Compared to His More Culpable Co-Defendant.**

There are various circumstances that can create a sentencing disparity. For instance, a sentencing disparity may result from subsequent changes to a statutory penalty structure. Under *Thacker*, we now know such disparities – rooted in a change in law – do not meet the extraordinary and compelling standard. However, a sentencing disparity may also result from disproportionate penalties among co-defendants. That is precisely the argument Mr. Spradley makes: His life without parole sentence is extraordinarily punative when compared to he 40-

year sentence of his more culpable co-defendant Mark White (who the PSR indicates was the actual shooter of Marcus Willis).

The Seventh Circuit's decision in *United States v. Thacker* is not the poison pill that the government believes it to be. In *Thacker*, the defendant sought compassionate release under § 3582(c)(1)(A). He argued that extraordinary and compelling reasons warranted relief in part because he would face a much shorter mandatory sentence if sentenced today. *Id.* The district court denied his motion, and the Seventh Circuit affirmed, holding that Congress's deliberate decision to make the amendment to § 924(c) prospective only meant that the change to § 924(c) could not be an extraordinary and compelling reason for relief under § 3582(c)((1)(A). *Id.* at 570.

**Nothing in the Seventh Circuit's *Thacker* decision precludes this Court from concluding a disproportionately punitive sentence (when comparing co-defendants), in combination with other individualized factors, constitutes an extraordinary and compelling reason to grant release.** There were six co-defendants in this case. Four co-defendants have already been released from prison. Only Mr. Spradley and his co-defendant Mark White remain incarcerated. Mr. White is scheduled to be released from BOP custody in 2032. There is no dispute that Anthony Spradley did not murder Marcus Willis. There is no dispute that Mr. Spradley was not even in the state when Willis was killed. Yet, Spradley is the only defendant who continues to serve a life sentence. He is the only defendant in his case without a release date.

| Name | Sentence | Release Date |
|---|---|---|
| Anthony Spradley | LIFE | NONE |
| Mark White | LIFE, reduced to 480 months | 12/06/2032 |
| Willie Boddie | LIFE, reduced to time served | 01/26/2021 |
| Ellis Walker | 327 months, reduced to 240 months | 03/07/2016 |
| Dennis Jones | 293 months, reduced to 235 months | 10/30/2015 |
| Anthony Thompson | 210 months | 11/07/2014 |

**3. Mr. Spradley is not relitigating old, rejected arguments.**

The government spends much of its brief casting Spradley's motion as an attempt to rehash arguments that he has already lost on direct appeal or collateral review. The government is incorrect. Mr. Spradley does not contend that his life sentence is based upon a misapplication of the guidelines, nor does he challenge the technical application of the murder cross-reference to his case. He has already presented (and lost) those arguments in prior litigation. Here, he contends that his life sentence, while technically correctly calculated, is disproportionately punitive. He has not been able to present that argument previously.

Indeed, these proceedings are the first opportunity for the court to consider Mr. Spradley's life sentence in relation to co-Defendant White's 40-year sentence. As the Court will recall, both men were originally sentenced to life imprisonment. On direct appeal, the

Seventh Circuit found vacated and remanded White's sentence on different grounds, but it upheld Spradley's. Therefore, this compassionate release motion is the first time the Court has had jurisdiction and the opportunity to review the proportionality of Mr. Spradley's sentence when compared to co-Defendant White's subsequently reduced 40-year penalty.

### C. Anthony Spradley's Life Sentence is Disproportionately Punitive Given the Letter from the Victim's Father.

Mr. Spradley's case is also extraordinary and compelling, given the unique support for his release from Edward White (the father of the murdered informant). The government's response entirely ignores this fact. The government does not appear to dispute the importance of Mr. White's letter.

## II. THE 3553(a) FACTORS

*"The man I once represented had to die in order for me to be the man I am today."*

– Statement of Anthony Spradley, dated May 20, 2021

Mr. Spradley's continued incarceration results in a punishment that is greater than necessary to meet the parsimonious principles of federal sentencing. *United States v. Dodd,* No. 3:03-CR-00018, 2020 WL 5200900, at *5 (S.D. Iowa July 29, 2020) ("The Court's lodestar is to ensure the sentence is 'sufficient, but not greater than necessary.' ")

As this Court reasoned in co-defendant Willie Boddie's case: "when considering a motion for sentence reduction under the First Step Act, a court can consider new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other

relevant information about a defendant's history and conduct." *United States v. Boddie*, No. 198CR00038JMSMJD, 2021 WL 230108, at *7 (S.D. Ind. Jan. 22, 2021) (quotations omitted)

**A. History and Characteristics; Circumstances of the Offense**

The government's response spends just 337 words addressing Mr. Spradley's 3553(a) arguments or his 25-year record of rehabilitation. It summarily concludes Mr. Spradley is a danger to the community but offers little to support that argument. Rather, it focuses on the case facts from 25 years ago and contends "this drugs and guns combination was an inherent danger to the community." ECF No. 225 at 12. As an initial matter, this Court has already rejected a similar carte blanche argument when it granted compassionate release for co-defendant Boddie. As the Court acknowledged, the conspiracy in this case "was extremely serious" and involved "huge amounts of cocaine" and "millions of dollars." *Id.* at *6. However, those facts were not necessarily dispositive of Your Honor's 3553(a) analysis. As in Boddie's case, Mr. Spradley "did not directly participate in the murder." *Id.* In fact, Mr. Spradley was acquitted of the government's charges related to Mr. Willis's murder. His life sentence is driven by a judicial finding of foreseeability and a guideline cross reference that formerly – but no longer – mandates a life sentence.

Tellingly, the government's response misses the arc of Mr. Spradley's rehabilitative story. The government does not mention or dispute the substantial and contemporaneous rehabilitation Spradley submitted in support of his release. It does not mention or dispute that Spradley has taken hundreds of hours of BOP classes for masonry, forklift training and

blueprint reading.[2] It does not mention or dispute that Spradley has established a relationship with Marcus Willis's father and that the victim's father does not oppose compassionate release. Defendant has provided ample evidence that he is no longer the same person whom this Court incarcerated over two decades ago. Mr. Spradley's efforts to communicate with Mr. Willis's father demonstrate his incredible contrition, courage, and emotional growth.

Mr. Spradley has submitted to the Court a release plan that includes his housing and an offer of employment. His childhood friend Kevin Lee, a music executive, has offered to pay for the first year of Mr. Spradley's housing. Mr. Lee is awaiting the Court's resolution of the instant motion before financially securing Mr. Spradley's housing. Mr. Spradley will supplement his release information with the exact address where he would live to the probation office, should the Court so direct in its order.

**B. The Need to Avoid Unwarranted Disparities**

In *United States v. Black*, 999 F.3d 1071 (7th Cir. 2021), the Seventh Circuit held a favorable, but nonretroactive change in law must be considered in the Court's 3553(a) analysis when deciding a motion brought under § 3582(c)(1)(A). Though not an extraordinary and compelling reason for his release, *see e.g. Thacker*, 2021 WL 2979530, the current advisory guidelines scheme is a 3553(a) factor that the Court must consider when assessing Spradley's motion.

---

2 *See* Exhibit A: BOP Individualized Reentry Plan - Program Review, dated February 28, 2020.

Indeed, it is an unwarranted disparity that the government has taken a position in this case directly contrary to its position in other districts. In *United States v. Scott*, 1:00-cr-00069-MR-5 (W.D.N.C. March 22, 2021) ECF No. 213 at 5, the government conceded the very point it opposes here. In response to defendant Scott's compassionate release motion, the government acknowledged:

> "This Court has the authority to find that extraordinary and compelling reasons are present for reducing a sentence where the sentence was based on laws that have been substantially revised in the intervening years, such that the prisoner is stuck serving far more time than he could possibly receive if he were to be resentenced today."

The government's response to Mr. Spradley's motion fails to explain why a district court judge sitting in the Western District of North Carolina "has the authority to find that extraordinary and compelling reasons are present for reducing a sentence where the sentence was based on laws that have been substantially revised in the intervening years" but Your Honor sitting in the Southern District of Indiana does not have the authority to address a life sentence that was – but is not longer – mandatory. The government's inconsistent and contradictory positions is based purely on the coincidence of geography and, thus, create an unwarranted sentencing disparity that should be considered in this Court's 3553(a) analysis. On this point, this Court's opinion in co-defendant Boddie's case is instructive:

> Mr. Boddie has maintained an almost-perfect conduct record during his incarceration and has taken steps toward rehabilitating himself, including earning his GED. The Court recognizes that the guidelines called for Mr. Boddie to receive a life sentence. And, it appears that, if he were sentenced today, the guideline range of imprisonment would still be life. Nonetheless, Mr. Boddie was sentenced in the pre-*Booker* era. If he were sentenced today, the life-sentence guideline would not be mandatory.

*United States v. Boddie*, No. 198CR00038JMSMJD, 2021 WL 230108, at *7.

As in Boddie's case, Mr. Spradley's life sentence is not a legislatively prescribed penalty, but rather a function of the then-mandatory guidelines. His case is distinguishable from the Court's decisions in *United States v. Newman*, No. 1:96-cr-0080-SEB-DKL-01, 2020 WL 6151250, at *3 (S.D. Ind. Oct. 19, 2020); *United States v. Barrios*, No. 3:02-cr-0002-RLY-CMM-05, ECF No. 123 (S.D. Ind. Sept. 21, 2020). And, although his guideline range remains life, a guideline sentence would no longer be mandatory. *See also Babb v. United States*, No. CR ELH-04-0190, 2021 WL 2315459, at *13 (D. Md. June 4, 2021)(The district court granted compassionate release and noted: "if [defendant] were prosecuted today, his Guidelines would still call for a sentence of life imprisonment, based on the murder cross reference. But, the Court would not be compelled to sentence him to life imprisonment.")

When assessing unwarranted disparities nationally, Mr. Spradley's life sentence is significantly longer than recently imposed federal sentences involving murder. According to statistics released by the United States Sentencing Commission for fiscal year 2020, the national average sentence for murder was 255 months, and the Seventh Circuit average was slightly lower at 247 months' imprisonment.[3]

---

[3] The United States Sentencing Commission's Interactive Data Analyzer is available at: https://ida.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FIDA%2F_portal%2FIDA%20Dashboards (last accessed Oct. 8, 2021).



**Average and Median Imprisonment Length**
Fiscal Year 2020

The figure includes the 293 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure. Sentences of 470 months or greater (including life) were included in the sentence average computations as 470 months. The information in this figure does not include probation or conditions of confinement as described in USSG §5C1.1.

**FILTER:**
Fiscal Year: 2020; Circuit: All; State: All; District: All; Race: All; Gender: All; Age: All; Citizenship: All; Education: All; Crime Type: Murder; Guideline: All; Drug Type: All; Sentencing Zone: All; Criminal History: All; Career Offender Status: All

For instance, in *United States v. Floyd*, CCB-16-597 (D. Md. July 23, 2019), Floyd was one of several defendants convicted of a racketeering conspiracy that included murders and drug conspiracy. Like Mr. Spradley, the lead defendant in *Floyd* was not the shooter. Although Floyd's offense level and criminal history category called for a life sentence, the district court for the District of Maryland imposed a total sentence of 360 months' imprisonment. *Id.,* ECF No. 691.

More recently, in *United States v. Antoine*, PWG-19-140 (D. Md. March 19, 2021), the defendant was involved in a drug trafficking organization in Baltimore and confessed to the intentional shooting and killing of an individual in relation to the drug conspiracy. *See id.*, ECF 349 at 9-10. Pursuant to a plea agreement, Antoine entered a plea of guilty to one count of conspiracy to distribute controlled substances and one count of discharging a firearm resulting in death during and in relation to a drug trafficking crime. *Id.* Although the

defendant in Antoine was the shooter and confessed to murder, the district court imposed a total sentence of 270 months (22.5 years). *Id.,* ECF 465. *See also United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a court should consider "all possible reasons for compassionate release," including the "injustice of [a defendant's] lengthy sentence").

Mr. Spradley has already served a greater number of years than the federal sentence confessed murderer Antoine received.

## III. CONCLUSION

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), Mr. Spradley moves for compassionate release. Combined with the "extraordinary and compelling" fact that his life sentence is disproportionately punitive, no longer supported by the victim's father or the current guidelines scheme, Mr. Spradley maintains he is entitled to and has earned compassionate release. The § 3553(a) factors weigh in favor of reducing his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Spradley has a demonstrated record of rehabilitation and a solid release plan that includes housing and employment.

Respectfully submitted,

By:

MiAngel Cody
*Counsel for Anthony Spradley*

THE DECARCERATION COLLECTIVE
1325 S. Wabash St., Ste. 305
Chicago, IL 60605
Ph: (312) 858-8330
Email: miangelcody@decarcerationlaw.com

**CERTIFICATE OF SERVICE**

The undersigned, MiAngel Cody, an attorney with TDC Law Office hereby certifies that on October 8, 2021, I electronically filed the following with the Clerk of the Court using the CM/ECF system:

**DEFENDANT ANTHONY SPRADLEY'S REPLY IN SUPPORT OF HIS MOTION FOR COMPASSIONATE RELEASE**

/s/ MiAngel Cody
MIANGEL CODY

THE DECARCERATION COLLECTIVE
LAW OFFICE
1325 S. Wabash Suite 305
Chicago, IL 60605

*Attorney for Anthony Spradley*

# EXHIBIT A: BOP RECORD



# Individualized Reentry Plan - Program Review (Inmate Copy)

SEQUENCE: 00763809
Dept. of Justice / Federal Bureau of Prisons
Team Date: 02-28-2020
Plan is for inmate: SPRADLEY, ANTHONY D 05772-028

Facility: LVN LEAVENWORTH USP
Name: SPRADLEY, ANTHONY D
Register No.: 05772-028
Age: 50
Date of Birth: 03-19-1969

Proj. Rel. Date: UNKNOWN
Proj. Rel. Mthd: LIFE
DNA Status: COP01653 / 05-07-2010

## Detainers

| Detaining Agency | Remarks |
|---|---|

*NO DETAINER*

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LVN | ELECTRIC 1 | ELECTRIC 1 | 01-31-2018 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LVN | ESL HAS | ENGLISH PROFICIENT | 02-15-2000 |
| LVN | GED HAS | COMPLETED GED OR HS DIPLOMA | 02-23-2000 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| LVN | C | ADVANCED CHESS | 09-30-2019 | 12-03-2019 |
| LVN | C | H.E.A.R.T. KCKCC-12-3PM | 12-10-2018 | 04-11-2019 |
| LVN | C | STRESS AND YOUR BODY P1 | 11-29-2018 | 02-28-2019 |
| LVN | C | HOW STOCK MARKET WORKS PART 1 | 11-27-2018 | 02-28-2019 |
| LVN | C | EXPERIENCING HUBBLE | 11-27-2018 | 02-28-2019 |
| LVN | C | EXPERIENCING HUBBLE | 11-26-2018 | 02-28-2019 |
| LVN | C | HOW STOCK MARKET WORKS PART 1 | 11-28-2018 | 02-28-2019 |
| LVN | C | CAREER EMPLOYMENT - AFTERNOON | 12-10-2018 | 01-07-2019 |
| LVN | C | PARENTING 6:00 PM TO 8:00 PM | 08-27-2018 | 09-26-2018 |
| MAN | C | FCI PARENTING PHASE 2 | 07-28-2016 | 09-18-2017 |
| MAN | C | VT ELECTRICAL PM: T,W,R | 10-27-2016 | 04-06-2017 |
| MAN | C | FCI PARENTING PHASE 1 | 04-26-2016 | 07-28-2016 |
| MAN | C | RPP#5 RELEASE PREP PROG A&O | 03-03-2016 | 03-03-2016 |
| POL | C | REAL ESTATE | 06-30-2015 | 09-29-2015 |
| POL | C | ARCHIVES WAR | 06-30-2015 | 09-29-2015 |
| POL | C | PERS GRWTH 7 HABITS RPP6 WED | 01-07-2015 | 03-24-2015 |
| POL | C | ACE SECRET SCI | 04-13-2014 | 10-20-2014 |
| POL | C | ACE NATURE ASSN | 04-13-2014 | 07-21-2014 |
| POL | C | 3 FINANCIAL PLANNING 6:30-8:30 | 06-17-2013 | 10-19-2013 |
| POL | C | FOOD PREP & UNDER | 06-17-2013 | 10-19-2013 |
| POL | C | BASIC MATH 6:30-8:30PM | 11-26-2012 | 02-23-2013 |
| POL | C | REAL ESTATE | 11-27-2012 | 02-23-2013 |
| POL | C | ACE FORKLIFT CLASS | 11-28-2012 | 02-23-2013 |
| COP | C | RPP HEALTH/NUTRITION #1 | 05-09-2012 | 05-09-2012 |
| COP | C | TUE-WED 7:30-3:30 VT CUST MAIN | 04-25-2011 | 09-15-2011 |
| COP | C | HEALTH/NUTRITION CLASS | 07-29-2011 | 09-14-2011 |
| COP | C | ADVANCED JUMP ROPE | 11-27-2010 | 03-05-2011 |
| COP | C | ACE CREATE WRITE M/W 1830-1930 | 10-16-2010 | 02-01-2011 |
| COP | C | ACE INTRO FINANCE:M/W1830-1930 | 07-31-2010 | 10-18-2010 |
| COP | C | INTERMEDIATE JUMP ROPE | 08-30-2010 | 10-15-2010 |
| COP | C | BEGINNING JUMP ROPE | 06-09-2010 | 09-22-2010 |
| COP | C | SEVEN HABITS AM (ACE) | 05-05-2010 | 08-27-2010 |
| COP | C | PSY SERVICES ANGER MGMT | 04-01-2010 | 04-01-2010 |
| THP LCP | C | WELLNESS CLASS-BASIC NUTRITION | 03-01-2009 | 06-21-2009 |
| BSY | C | LEADERSHIP CLASS FOR ONE WAY | 07-25-2008 | 10-29-2008 |
| BSY | C | COURAGE TO HEAL PT.1;T;6:30PM | 04-17-2008 | 06-10-2008 |
| BSY | C | DIABETIC WORKSHOP(RPP#1) | 02-26-2008 | 02-26-2008 |



## Individualized Reentry Plan - Program Review (Inmate Copy)

SEQUENCE: 00763809

Dept. of Justice / Federal Bureau of Prisons

Team Date: 02-28-2020

Plan is for inmate: SPRADLEY, ANTHONY D 05772-028

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| BSY | C | ELL ORIENTATION | 01-09-2007 | 01-09-2007 |
| BEC | C | HALFWAY HOUSE REGS. | 09-10-2003 | 09-10-2003 |
| BEC | C | VT MASONRY CLASS 1230-1530 | 04-04-2002 | 10-04-2002 |
| BEC | C | BLUE PRINT READING WEIKEL PM | 05-22-2000 | 07-21-2000 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|---|---|

*** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ***

**Current Care Assignments**

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 01-29-2010 |
| CARE1-MH | CARE1-MENTAL HEALTH | 07-22-2010 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 01-29-2010 |
| YES F/S | CLEARED FOR FOOD SERVICE | 09-25-2012 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| ED COMP | DRUG EDUCATION COMPLETE | 09-15-2010 |
| NR WAIT | NRES DRUG TMT WAITING | 09-05-2017 |

**FRP Details**

Most Recent Payment Plan

**FRP Assignment:** **PART** **FINANC RESP-PARTICIPATES** **Start: 09-06-2017**

Inmate Decision: **AGREED** **$25.00** Frequency: **QUARTERLY**

Payments past 6 months: **$50.00** Obligation Balance: **$7,950.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $900.00 | ($169.51) | IMMEDIATE | EXPIRED |

*** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ***

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 2 | FINE | $10,000.00 | $7,950.00 | IMMEDIATE | AGREED |

| Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|
| | 12-11-2019 | LVN | PAYMENT | INSIDE PMT | $25.00 |
| | 09-13-2019 | LVN | PAYMENT | INSIDE PMT | $25.00 |

**Payment Details**

Trust Fund Deposits - Past 6 months: $1,915.72 Payments commensurate ? Y

New Payment Plan: ** No data **

**Progress since last review**

SPRADLEY maintains a work assignment in Electric 1, he completed Advanced Chess and has maintained clear conduct during this period of evaluation.

**Next Program Review Goals**

Team recommends enrollment in Reaching Out From Within.

**Long Term Goals**

Complete Reaching Out From Within by 3/21.

**RRC/HC Placement**

No.
Management decision - Life sentence .

**Comments**

NOTE: Perspective visitors must be approved and listed correctly on the Inmate Visitor List prior to arrival. All immediate family members wishing to visit must be listed on the approved Visitor List. Upon arrival, all visitors age 16 and older must present valid state or

**Individualized Reentry Plan - Program Review (Inmate Copy)**
SEQUENCE: 00763809
Dept. of Justice / Federal Bureau of Prisons
Team Date: 02-28-2020
Plan is for inmate: SPRADLEY, ANTHONY D 05772-028

government-issued photo identification.

Release Preparation Program (RPP). RPP is composed of programs within 6 core topics: 1-Health/Nutrition, 2-Employment, 3-Financial Planning, 4-Community Resources, 5-Release Information and 6-Personal Growth. At least one class/program is required for each core topic.

Residential Reentry Center (RRC=halfway house)/2nd Chance Act review closer to release.

Sentry Data as of 02-28-2020 Individualized Reentry Plan - Program Review (Inmate Copy) Page 3 of 4