UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 1:98-cr-0038-JMS-MJD-01 |
| | ) | |
| ANTHONY SPRADLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

The United States, by counsel, respectfully submits this response in

opposition to the *pro se* motion for compassionate release filed by Anthony

Spradley.  (Dkt. 256).  Spradley claims that his sentence of life imprisonment

should be reduced under recently adopted Sections 1B1.13(b)(5) and (b)(6) of

the United States Sentencing Guidelines.

The defendant, however, cannot present an extraordinary and compelling

reason for a sentencing reduction because the relief he seeks under

subsections (b)(5) and (b)(6) do not apply to his situation and is in any event

invalid under *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021).  Even if

subsections (b)(5) and (b)(6) are valid despite this precedent, Spradley

nevertheless cannot show extraordinary and compelling circumstances because

his sentence was neither "unusually long" nor represents a "gross disparity"

1

with the likely sentence he would receive today.  Finally, the factors contained

in 18 U.S.C. § 3553(a) do not support a sentence reduction in Spradley's case.

The Court should deny Spradley's motion in its entirety.

## I.   FACTUAL & PROCEDURAL BACKGROUND

### A.   Background Facts

From 1993 to 1998, Spradley was the organizer and leader of a large

drug and money laundering conspiracy.  (Dkt. 230 ¶ 4); *United States v.*

*Thompson*, 286 F.3d 950, 956 (7th Cir. 2002).  The Seventh Circuit, on direct

appeal, summarized the facts of Spradley's crime as follows:

> Defendants Willie Boddie, Stephanie Johnson, Dennis Jones,
> Anthony Spradley, Anthony Thompson, Ellis Walker, and Mark
> White were charged with crimes arising out of their participation in
> a large, Indianapolis-based drug conspiracy. The conspiracy
> reigned from 1992 to 1997 and involved the trafficking of hundreds
> of kilograms (kilos) of cocaine, the accumulation and laundering of
> substantial profits, and two short-lived business pursuits. The
> conspiracy seemed invincible until November 1996, when Marcus
> Willis, working on behalf of law-enforcement officials, arrived on
> the scene. He worked for law enforcement for approximately eight
> months (through June of 1997) until he was murdered in one of
> the defendant's vehicles. Not long after this murder, charges were
> filed against each of the defendants and several others . . .

*Thompson*, 286 F.3d at 956.  In sum, Spradley was responsible for between 500

and 1,000 kilograms of cocaine, and more than $11,500,000 in money

laundering.  (Dkt. 230 ¶ 28.)

In 1997, Spradley aided and abetted a murder.  As the Seventh Circuit

explained:

> The district court found that Spradley knew Willis had been
> murdered to keep him from relaying any more information to law-

2

enforcement authorities. It based its findings, in part, on evidence that Spradley knew about Willis's informant activities. Coconspirator Keith Cork testified at trial that several days before Willis's murder, he and Spradley confronted Willis about rumors that he had been talking to the police. Cork's testimony was corroborated by a statement to the same effect made by Willis to police on June 20, 1997, approximately ten days before the murder. In addition, Cork testified that Spradley, in a meeting about Willis's informant activities attended by several conspiracy members, said that he would not let anyone hurt them.

We believe that this evidence sufficiently supports the conclusion that it was reasonably foreseeable to Spradley that Willis would be murdered with malice aforethought. Spradley knew that Willis was likely to be murdered in an attempt to prevent him from further exposing the conspiracy, which satisfies the test of reasonable foreseeability. Therefore the district court did not err by applying the First–Degree Murder Guideline to Spradley.

*Thompson*, 286 F.3d at 959.

Nor was this the only violence associated with the organization. Attempts were made by others to rob Spradley who in turn, kidnapped, held at gunpoint, and fired shots at these individuals. (Dkt. 230 ¶¶ 12-13.)  One individual was kidnapped in Georgia at gunpoint, brought to Indianapolis, and held for two days for not providing "good quality cocaine." (*Id.* ¶ 14.)  Another individual failed to repay Spradley, and an argument ensued that resulted in gunshots being fired at the individual's residence. (*Id.* ¶ 15.)

On June 30, 1988, Spradley and eleven other defendants were charged in a twenty-five count Superseding Indictment. (*Id.* ¶ 1.)  The Superseding Indictment charged Spradley with conspiracy to distribute controlled substances (Count 1), murder (Counts 2 and 3), use of a firearm during the commission of a crime of violence (Count 4), conspiracy to launder monetary

3

instruments (Counts 7 and 8), and money laundering (Counts 10, 11, 14-17, 19, 20, and 23-25.  (*Id.*)  On September 4, 1999, a jury convicted Spradley of Counts 1, 7, 8, 14-17, 19, 20, and 23-25.  (*Id.*)  The jury acquitted Spradley of Counts 2-4, 10, and 11.  (*Id.*)

At sentencing, the Court found Spradley accountable for the murder under U.S.S.G. § 2D1.1(d)(1), which increased his base offense level under the sentencing guidelines from 38 to 43; a separate enhancement for role in the offense further increased his base offense level to 47.  (Sent. Tr. at 48.)  The Court sentenced Spradley to life imprisonment.  As the sentencing proceeding occurred prior to the Supreme Court's opinion in *United States v. Booker,* 543 U.S. 220 (2005), the sentencing guideline range of life imprisonment constituted a mandatory sentence.

Spradley appealed, but the Seventh Circuit affirmed his conviction and sentence, upholding the application of the drug offense murder cross-reference. *Thompson*, 286 F.3d 950.

On June 15, 2021, Spradley filed his first motion for compassionate release.  (Dkt. 214.)  In the motion, Spradley argued that the combination of the fact that his life sentence was no longer mandatory due to the Bookerdecision and his post-sentencing rehabilitation constituted extraordinary and compelling reasons justifying compassionate release.  (*Id.*)

Following *United States v. Thacker,* 4 F.4th 569 (7th Cir. 2021), this Court held that the changes to sentencing law wrought by *Booker* could not

constitute an extraordinary and compelling reason warranting Spradley's release.  (Dkt. 234 at 10.)  The Court proceeded to reject the argument that his post-sentencing rehabilitation constituted a sufficient basis for compassionate relief, along with other arguments offered by Spradley.  (*Id.* at 12-14.)  The Court denied Spradley's first motion for compassionate release.

### B.    Spradley's Second Motion for Compassionate Release

On December 11, 2023, Spradley filed a second motion for compassionate release.  (Dkt. 256.)  Spradley argues that the changes in sentencing law created by *Booker* and his post-sentencing rehabilitation – the same factors presented in his first motion for compassionate release – justify compassionate release based upon sections 1B13(b)(5) and (b)(6), which were created by recent amendments to the Sentencing Guidelines.  The government opposes this motion.

## II.   LEGAL BACKGROUND

### A.    Sentencing Reform Act of 1984

The Sentencing Reform Act of 1984 "overhaul[ed] federal sentencing practices."  *Tapia v. United States*, 564 U.S. 319, 325 (2011).  To make prison terms more determinate, Congress established the Sentencing Commission as an independent agency in the Judicial Branch and "authorized it to promulgate Sentencing Guidelines and to issue policy statements."  *Dillon v. United States*, 560 U.S. 817, 820 (2010); *see* 28 U.S.C. §§ 991, 994(a).  "The Commission was born of congressional disenchantment with the vagaries of federal sentencing

and of the parole system," and Congress directed the Commission to "eliminate unwarranted disparities in punishment of similar defendants who commit similar crimes." *Neal v. United States*, 516 U.S. 284, 290-91 (1996).

Congress also abolished the practice of federal parole, specifying that a "court may not modify a term of imprisonment once it has been imposed" except in certain enumerated circumstances.  18 U.S.C. § 3582(c); *see Tapia*, 564 U.S. at 325.  One of those circumstances, set forth in 18 U.S.C. § 3582(c)(1)(A) (and commonly referred to as "compassionate release"), authorizes a court to "reduce [a] term of imprisonment . . . , after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds," as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  As originally enacted, Section 3582(c)(1)(A) authorized such reductions only "upon motion of the Director of the Bureau of Prisons" (BOP).   Sentencing Reform Act § 212(a)(2), 98 Stat. 1998.

Congress directed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [Section] 3582(c)."  28 U.S.C. § 994(a)(2)(C).  Congress instructed the Commission, in promulgating policy statements regarding Section 3582(c)(1)(A), to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."   28 U.S.C. § 994(t).

Congress specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

In 2006, the Commission promulgated Sentencing Guidelines § 1B1.13, p.s. As amended in 2016, the policy statement described four categories of reasons that should be considered extraordinary and compelling: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons" "determined by the Director of the Bureau of Prisons" to be "extraordinary and compelling" "other than, or in combination with," the reasons described in the other three categories. Sentencing Guidelines App. C Supp., Amend. 799 (Nov. 1, 2016).

### B.     First Step Act of 2018

In the First Step Act of 2018, Congress amended Section 3582(c)(1)(A) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. See Pub. L. No. 115-391, Tit. VI, § 603(b), 132 Stat. 5194, 5239. As modified, Section 3582(c)(1)(A) now states:

> the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

7

Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members, and remained without a quorum for more than three years. *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). The Commission thus did not immediately amend the policy statement to account for the First Step Act's procedural change. In the intervening years, nearly every circuit held that the existing policy statement's description of what should be considered "extraordinary and compelling" reasons for a sentence reduction was not applicable to defendant-filed motions. *See United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020); *see also United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (collecting cases). *But see United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021).

As a result, and in the absence of a binding policy statement, the courts of appeals were obliged to construe the plain meaning of the phrase "extraordinary and compelling reasons" as used in Section 3582(c)(1)(A)(i). The majority of circuits to consider the question—including the Seventh Circuit—determined that a change in the law that applies prospectively, whether considered alone or in combination with other factors, cannot constitute an "extraordinary and compelling" reason for a sentence reduction. *See United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *see also United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198-1200 (D.C.

Cir. 2022); *see also United States v. McMaryion*, No. 21-50450, 2023 WL
4118015, at *2 (5th Cir. June 22, 2023) (per curiam) (unpublished). Four
circuits, in contrast, have taken the view that a change in the law can form part
of an individualized assessment of whether to grant a sentence reduction, but
only in combination with other case-specific factors. *Ruvalcaba*, 26 F.4th at 28;
*United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Chen*,
48 F.4th 1092, 1097-98 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035,
1047-48 (10th Cir. 2021).

### C. Sentencing Guidelines Amendments of 2023—U.S.S.G. § 1B1.13(b)(6)

In 2022, the Sentencing Commission regained a quorum, and after public
notice and comment voted on April 5, 2023, to promulgate amendments to the
Guidelines Manual, including to Section 1B1.13's policy statement. 88 Fed. Reg.
28,254, 28,254-28,281 (May 3, 2023); *see also* Sentencing Commission Public
Meeting Tr. 27-82 (Apr. 5, 2023) ("4/5/23 Tr."). The amendments to U.S.S.G. §
1B1.13 render the policy statement applicable to defendant-filed motions. As
relevant here, the amendments also purport to allow, with certain limitations,
consideration of changes in law—including ones Congress has chosen not to
make retroactive—when determining whether a defendant has presented an
extraordinary and compelling reason for a sentence reduction. That change is
reflected in new sections 1B1.13(b)(5), (b)(6), and (c), which provide:

> (5) OTHER REASONS – The defendant presents any other
> circumstance or combination of circumstances that, when
> considered by themselves or together with any of the reasons

9

described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c) LIMITATION ON CHANGES IN LAW.—Except as provided in § 1B1.13(b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; see U.S.S.G. § 1B1.13(b)(6), (c).

The Commission divided 4-3 on whether to promulgate the amendments to Section 1B1.13.  *See* 4/5/23 Tr. 81-82.  The dissenting Commissioners explained that, in their view, the policy statement "goes further than the Commission's legal authority extends," and the Commission had made "a seismic structural change to our criminal justice system without congressional authorization or directive."  *Id.* at 60 (Commissioner Wong, delivering joint statement).

10

With regard to new sections 1B13(b)(6) and (c), the Commission's decision to allow nonretroactive changes in law to establish a basis for a sentence reduction "supplants Congress's legislative role" and would authorize courts "to revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that Congress did not wish to make retroactive." *Id.* at 60-61. "The separation of powers problem" with that result, the dissenting Commissioners explained, "should be apparent," as "[i]t is not the Commission's role to countermand Congress's legislative judgments."  *Id.* at 61.

The dissenting Commissioners likewise noted that the catch-all provisions of section 1B13(b)(5) violated the Commission's statutory mandate under 28 U.S.C. § 994(t) to provide criteria to be applied in considering compassionate release case and a list of specific examples.  *Id.* at 70.  The dissenting Commissioners argued that the "sweeping catch-all" provision constituted an abdication of the Commission's responsibility to articulate clear criteria for the implementation of the compassionate release statute.  *Id.* at 72.  The Commissioners noted that this provision "offers no substantive guidance and risks swallowing the whole." *Id.* at 73.

The Commission submitted its proposed Guidelines amendments to Congress on April 27, 2023.  Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023.  88 Fed. Reg. at 28,254; see 28 U.S.C. § 994(p).

**III.    SPRADLEY SHOULD NOT RECEIVE COMPASSIONATE RELEASE UNDER U.S.S.G. § 1B1.13(b)(6)**

11

The Court should deny Spradley's second motion for compassionate release under Section 1B1.13(b)(6).  First, Spradley effectively asks that the Court treat as retroactive changes in the law that Congress explicitly did not make retroactive.  The Court should not indulge the invitation, as the United States Sentencing Commission exceeded its authority in promulgating U.S.S.G. § 1B1.13(b)(6), one of the new provisions on which Spradley relies.  The law provides a narrow exception in 18 U.S.C. § 3582(c)(1)(A)(i) to the general rule that a federal court "may not modify a term of imprisonment once it has been imposed," permitting a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant a reduction. Nonretroactive changes in sentencing law are neither.  To the contrary, "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012).  Accordingly, although Congress delegated broad authority to the Sentencing Commission, § 1B1.13(b)(6) is contrary to the statute's text, structure, and purpose, and is invalid under the reasoning of *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021).

In Section 3582(c)(1)(A)(i), Congress enacted a narrow exception to the general rule that a federal court "may not modify a term of imprisonment once it has been imposed," permitting a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant a reduction.

12

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons," 28 U.S.C. § 994(t), but the Commission's authority necessarily is limited by Congress's clear directive that any such reasons be both extraordinary and compelling. Nonretroactive changes in sentencing law are neither. To the contrary, "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012).

To support his motion for a sentence reduction, Spradley invokes subsection (b)(6) of the policy statement, in which the Sentencing Commission interpreted Section 3582(c)(1)(A)(i) to permit changes in law to establish "extraordinary and compelling" reasons for a sentence reduction where a defendant has served at least 10 years' imprisonment while serving an "unusually long" sentence, and there has been a change in law that would produce a gross disparity between the sentence being served and the sentence likely to be imposed.

Although Congress delegated broad authority to the Sentencing Commission, subsection (b)(6) is contrary to the statute's text, structure, and purpose, and is invalid under the reasoning of *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021).

**A.      The Sentencing Commission Exceeded Its Congressionally Delegated Authority in Promulgating Subsection (b)(6**)

### 1. In Exercising Its Authority, the Commission Cannot Act Contrary to the Statute

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).[1]  Such a delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977).  Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); *see Batterton*, 432 U.S. at 428.  An agency cannot adopt an impermissible reading of the statute—i.e., a reading that exceeds the gap left by Congress.  *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

The Sentencing Commission in particular "was not granted unbounded discretion," and as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (reasoning that the

---

[1] The Supreme Court has granted certiorari in *Loper Bright Enterprises v. Raimondo*, No. 22-451, to consider whether the Court's decision in *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), should be overruled.  Because *Chevron* concerns the deference owed to an agency when Congress has only implicitly delegated interpretive authority, *Chevron*, 467 U.S. at 844, the Court's resolution of *Loper* will not affect the deference due when Congress has expressly identified a gap for an agency to fill.  *See United States v. Mead Corp.*, 533 U.S. 218, 228-29 (2001) (distinguishing among express and implicit delegation); *see also Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 286 (2016) (Thomas, J., concurring) (explaining that an "express and clear conferral of authority" to an agency does not implicate *Chevron*).

discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide that discretion).  In the Sentencing Reform Act, itself, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute."  28 U.S.C. § 994(a).  And Congress authorized the Commission only to "make recommendations to Congress concerning modification or enactment of statutes relating to sentencing."  *Id.* § 995(a)(20) (emphasis added).

### 2.    Section 1B1.13(b)(6) Conflicts with Section 3582(c)(1)(A)'s Plain Text, Context, and Purpose — For the Reasons Articulated in *Thacker*

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'"  *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)).  Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling."  18 U.S.C. § 3582(c)(1)(A)(i).  No reasonable interpretation of that phrase's text, particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The Seventh Circuit has already held as much, determining that Section 3582(c)(1)(A)(i)'s clear meaning excludes intervening developments in sentencing law from constituting "extraordinary and compelling" reasons for a

sentence reduction, whether considered alone or in connection with other factors and circumstances.

Specifically, in *United States v. Thacker*, the Seventh Circuit rejected a defendant's claim that he was entitled to a sentence reduction due to the First Step Act's anti-stacking amendment. 4 F.4th 569, 571 (7th Cir. 2021). Thacker, who received a 33-year sentence premised in part on two Section 924(c) convictions, argued among other things that the change in law effected by the First Step Act qualified as an extraordinary and compelling reason supporting a sentencing reduction. *Id.* at 572. The district court denied his motion for compassionate release and the Seventh Circuit affirmed.[2] *Id.* at 571.

Because the Seventh Circuit did not consider there to be a then-applicable policy statement, the court directly interpreted the statutory phrase "extraordinary and compelling" in the context of the "discretionary authority conferred by § 3582(c)(1)(A)." *Id.* at 574. In the end, the court concluded that the discretionary authority "only goes so far [, and] [i]t cannot be used to effect a sentencing reduction at odds with Congress's express determination embodied in [Section 403] of the First Step Act that the amendment to [Section] 924(c)'s sentencing structure apply only prospectively." *Id.* "To conclude otherwise," the

---

[2] Spradley argues that the Supreme Court's decision in *Concepcion v. United States,* 142 S. Ct. 2389 (2022), undermines *Thacker* by holding that a district court must consider intervening changes in case law before adjudicating a motion under the First Step Act. (Dkt. 256 at 8-9.) *Concepcion*, however, does not apply to the instant case because *Concepcion* applies to First Step Act resentencings, and not to the issue of compassionate release. *United States v. Peoples,* 41 F.4th 837, 842 (7th Cir,. 2022). Thus, *Thacker* remains intact and Spradley cannot receive compassionate release based upon changes in sentencing law. *Id.*; *see also United States v. King,* 40 F.4th 594, 595-96 (7th Cir. 2022).

court reasoned, "would allow a federal prisoner to invoke the more general [Section] 3582(c) to upend the clear and precise limitation Congress imposed on the effective date of the First Step Act's amendment to [Section] 924(c)."  *Id.* (citing *United States v. Jarvis*, 999 F.3d 442, 443-44 (6th Cir. 2021)).  In other words, "there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district imposed for particular violations of a statute."  *Id.*[3]

In rejecting Thacker's claim, the Seventh Circuit also expressed its "broader concerns with allowing § 3582(c)(1)(A) to serve as the authority for relief from mandatory minimum sentences prescribed by Congress."  *Thacker*, 4 F.4th at 574.  Specifically:

> We see nothing preventing the next inmate serving a mandatory minimum sentence under some other federal statute from requesting a sentencing reduction in the name of compassionate release on the basis that the prescribed sentence is too long, rests on a misguided view of the purposes of sentencing, reflects an outdated legislative choice by Congress, and the like.

*Id.*  Thus, the court reasoned, "the discretion conferred by § 3582(c)(1)(A) does not include authority to reduce a mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling circumstance warranting a sentencing reduction."  *Id.*

---

[3]   Other circuits have found likewise.  *See, e.g.*, *United States v. Andrews*, 12 F.4th 255, 260-61 (3d Cir. 2021); *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. 2023) (unpublished); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198-1200 (D.C. Cir. 2022).

The Commission's recent policy statement—which purports to allow intervening developments in sentencing law to constitute "extraordinary and compelling" reasons in direct conflict with *Thacker*—cannot provide a basis to reconsider that precedent, because "a precedent holding a statute to be unambiguous forecloses a contrary agency construction." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005); *see Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536-37 (1992) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of stare decisis, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning.") (internal quotation marks omitted).

Put differently, the Seventh Circuit's determination in *Thacker* remains binding here and the Sentencing Commission "does not have the authority" to "override" that authoritative construction of the statute's clear meaning. *Neal v. United States*, 516 U.S. 284, 290, 294 (1996). The Commission's interpretation of the statute as set forth in § 1B1.13(b)(6) is unreasonable and therefore invalid. *See Mayo Found.*, 562 U.S. at 58; *LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

### 3. Booker Was Not Made Retroactive And Is Neither An Extraordinary Nor A Compelling Reason For A Sentencing Reduction

The Seventh Circuit's precedent, in any event, is correct.  To justify a sentence reduction under Section 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary" and "compelling."  As a matter of plain language, an intervening change in the law is neither.

Congress's decision not to apply a change in sentencing law retroactively, in particular, is neither extraordinary nor compelling.  Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute,'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), the word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent,'" *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (*en banc*) (quoting Webster's Third New International Dictionary of the English Language 807 (1971) (Webster's)).  Far from being unusual, uncommon, or unprecedented, a defendant's lawfully imposed sentence simply reflects the law at the time he was sentenced.

Here, Spradley invokes Congress's decision not to apply *Booker* retroactively to defendants like him as a change in law warranting a sentence reduction.  In the First Step Act, among other things, Congress amended Section 841(b)(1)(A) to reduce the statutory mandatory minimum sentences for recidivist drug offenders.  In Section 401(c) of the Act, however, Congress made the deliberate choice not to make that amendment applicable to defendants

19

who had been sentenced before the Act's enactment, specifying that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment." § 401(c), 132 Stat. 5221.  In so doing, Congress adhered to "the ordinary practice" in "federal sentencing" of "apply[ing] new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey*, 567 U.S. at 280; cf. 1 U.S.C. § 109 (general nonretroactivity provision).

Given Congress's deliberate choice not to make *Booker* retroactively applicable to defendants who had already been sentenced, "there is nothing 'extraordinary' about" the fact that Spradley's sentence reflects the statutory penalty that existed at the time he was sentenced.  *Thacker*, 4 F.4th at 574. That sentence "was not only permissible but statutorily required at the time," *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring.

And when Congress enacted the First Step Act, it specifically declined to make *Booker* retroactive, even as it made other (previous) changes in sentencing law applicable to defendants previously sentenced.  In Section 404 of the same Act, for example, Congress expressly enacted a mechanism allowing defendants convicted under certain drug statutes (those for which penalties had been modified by certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372) to seek retroactive application of those statutory changes in their cases.  Section 404 authorizes a sentencing

court to "impose a reduced sentence as if [those provisions] of the Fair
Sentencing Act" had been in effect at the time of the defendant's offense. §
404(b), 132 Stat. 5222. But Congress simultaneously declined to disturb
Section 841(b)(1)(A) sentences—like Spradley's—that had already been imposed
notwithstanding the different penalties that Section 401 would require courts
to apply at future sentencings.

A nonretroactive change to a statutory provision likewise cannot
constitute a "compelling" reason for a sentence reduction. When Congress
enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still
means) "forcing, impelling, driving." *McCall*, 56 F.4th at 1055 (quoting
Webster's 463). Thus, for a reason to be "compelling" under Section
3582(c)(1)(A)(i), it must provide a "forcing, impelling, [or] driving" reason to
disturb the finality of a federal sentence. *Id.* (internal quotation marks
omitted). Even beyond the First Step Act's explicit determination not to apply
the amendment to Section 841(b)(1)(A) retroactively, ordinary principles of
nonretroactivity already consider, and reject, the notion that changes in
statutory law generally should be applied retrospectively. Congress enacts new
sentencing statutes against a background principle, codified in 1 U.S.C. § 109,
that a criminal statute does not change the penalties "incurred" under an older
criminal statute "unless the repealing Act . . . so expressly provide[s]." The
"strong presumption against statutory retroactivity" "is 'deeply rooted in our
jurisprudence' and 'embodies a legal doctrine older than our Republic.'"

21

*Jenkins*, 50 F.4th at 1198 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)).  To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles.  Nothing about a nonretroactive change in the law forces, impels, or drives such a nonsensical outcome.

Any disparity between Spradley's sentence and the sentence he would receive today is the product of deliberate congressional design—namely, Congress's decision not to make the changes to sentencing procedure created by *Booker* retroactive to defendants sentenced before the *Booker* decision.  As the Supreme Court has recognized, such "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)."  *Dorsey*, 567 U.S. at 280.  And treating Congress's express adherence to "ordinary practice" in federal sentencing, *id.*, "as simultaneously creating an extraordinary and compelling reason for early release" would contravene various canons of construction, *Andrews*, 12 F.4th at 261.

Accordingly, a nonretroactive change in the law cannot serve as either an "extraordinary" or a "compelling" reason for a sentence reduction in isolation or as adding to a package of such "reasons."  18 U.S.C. § 3582(c)(1)(A)(i).  Whether considered alone or in combination with other asserted factors, the possibility that a previously sentenced defendant might receive a lower sentence if he were

sentenced today is a "legally impermissible" consideration for purposes of determining whether an extraordinary and compelling reason exists. *Jenkins*, 50 F.4th at 1202 (internal quotation marks omitted); *see United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

### 4. The Context of Section 3582(c) Further Confirms that the Term "Extraordinary and Compelling" Cannot Encompass Intervening Changes in Law

Congress has expressly required that any reason for a sentence reduction be both "extraordinary and compelling," 18 U.S.C. § 3582(c)(1)(A)(i). As explained above, an intervening change is neither under those terms' ordinary meaning, and by using that phrase Congress did place clear textual limits on the reasons the Commission could validly identify as warranting a sentence reduction.

"Statutory construction," moreover, "is a holistic endeavor" and a provision "is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988). Other features of the scheme confirm that the phrase "extraordinary and compelling reasons" does not encompass changes in law.

Most notably, in the very next paragraph of Section 3582(c), Congress expressly addressed the retroactive application of some changes in law. In

23

Section 3582(c)(2), Congress authorized courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  18 U.S.C. § 3582(c)(2); *see* 28 U.S.C. § 994(u) (directing the Commission to determine when such modifications are appropriate).  There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had Section 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not."  *McCall*, 56 F.4th at 1056. That Congress did not similarly provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law suggests that Congress did not intend for Section 3582(c)(1)(A) to reach such changes.

Reducing sentences based on intervening changes in the law also would undermine congressional design more generally because, as noted above, a motion brought pursuant to 28 U.S.C. § 2255 is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023); *see Thacker*, 4 F.4th at 574. (explaining that Section 2255 provides the "principal path" that Congress has "established for federal prisoners to challenge their sentences" after they have become final).  Treating a nonretroactive change in the law as an "extraordinary and compelling" reason for a sentence reduction would allow

defendants to "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead." *Crandall*, 25 F.4th at 586. It "would wholly frustrate explicit congressional intent to hold that [defendants] could evade" those restrictions "by the simple expedient of putting a different label on their pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973). Congress surely "knew of its specific statutory scheme authorizing post-conviction relief" both "when it [enacted Section 3582(c)(1)(A)] in 1984 and amended it in 2018," and had "Congress intended the compassionate-release statute to act as an exception to this post-conviction framework, it would have made that intent specific." *McCall*, 56 F.4th at 1057-58 (internal quotation marks omitted).

     **5.**     **Recognizing Intervening Changes in Law as Extraordinary or Compelling Reasons for a Sentence Reduction Under Section 3582(c)(1)(A)(i) Also Would Undermine a Primary Purpose of the Sentencing Reform Act, in which that Provision was Enacted.**

Through the Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." *Mistretta*, 488 U.S. at 366 (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate Report)); *see also Neal*, 516 U.S. at 290-91 ("The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system"). The practices of federal courts and the Parole Commission

left "each judge . . . to apply his own notions of the purposes of sentencing," resulting in an "astounding" and "inevitable disparity" in sentencing that was "not justified by differences among offenses or offenders" and was "unfair both to offenders and to the public."  Senate Report at 38, 41, 45. "A primary goal" of the Act was "the elimination of unwarranted sentencing disparity."  Senate Report at 52.  In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[ ] judges' discretion by establishing a framework to govern their consideration and imposition of sentence." *Tapia*, 564 U.S. at 325.

Consistent with Congress's goal of determinate sentencing, Section 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances."  Senate Report at 55, 121.  Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as the archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence.  *Id.* at 55-56, 121.

Subsection (b)(6), however, purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today.  U.S.S.G. § 1B1.13(b)(6).  That authority is incompatible with the

Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to Section 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of sentencing."  Senate Report at 38. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively produces a "gross disparity," and what a "gross disparity" looks like.  It is doubtful the Sentencing Reform Act "contained the[ ] seeds of its own destruction," *Jenkins*, 50 F.4th at 1202, and there is no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing, Congress nevertheless created such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy," *Crandall*, 25 F.4th at 586.

The Sentencing Commission's explanation for the amendment cites a single sentence from the Senate Report to support its conclusion that Section 3582(c)(1)(A)(i) allows courts to reduce "unusually long sentences."  *See* 88 Fed. Reg. at 28,258.  In the relevant passage, the Senate Judiciary Committee expressed its belief that the "unusual cases in which an eventual reduction in the length of a term of imprisonment" would be "justified by changed circumstances" might include "cases of severe illness" or "cases in which other

extraordinary and compelling circumstances justify a reduction of an unusually long sentence."  Senate Report at 55.  The Commission takes that line—which is ambiguous at best—out of context and elevates that single sentence above the Act's plain text and overarching purpose.  In context, the passage suggests only that Congress anticipated that the sort of "changed circumstances" that might warrant a sentence reduction would most often emerge during the duration of an "unusually long" period of incarceration—during which a prisoner might become elderly or infirm, for example.  *Id.* Indeed, the passage makes clear that to justify even the reduction of an unusually long sentence Congress understood Section 3582(c)(1)(A) to require the identification of particular "extraordinary and compelling circumstances." *Id.*  The passage does not suggest that Section 3582(c)(1)(A) provides authority to reduce any sentence a court subsequently comes to view, in hindsight, as "unusually long."

The Commission also invokes the First Step Act of 2018's stated intent to increase the use of sentence reduction motions.  *See* 88 Fed. Reg. at 28,256; § 603(b), 132 Stat. 5239.  But nothing about the First Step Act's procedural amendment to Section 3582(c)(1)(A) or Congress's expectation that the amendment would lead to greater use of the provision "suggests Congress intended to change th[e] substantive status quo with a process-oriented amendment."  *McCall*, 56 F.4th at 1060.  Congress's effort to allow defendants to file sentence-reduction motions directly sought to remedy perceived

deficiencies in the BOP's preexisting procedures, which prevented the BOP from bringing Section 3582(c)(1)(A) motions on behalf of some defendants who satisfied longstanding criteria for relief.   Congress, however, did not amend the statutory requirement that reasons for a sentence reduction be extraordinary and compelling.  Tellingly, the amendment explicitly conditioned a defendant's filing on a requirement that he first "exhaust[ ]" with BOP a request that BOP "bring a motion on the defendant's behalf."  18 U.S.C. § 3582(c)(1)(A). Congress could not have expected BOP to evaluate whether an intervening change in law warranted a defendant's early release from custody; indeed, BOP typically plays no role in "determining the lawfulness of individual sentences," "calculating guideline ranges," or assessing the possible disparity produced by a defendant's sentence.  *See Jenkins*, 50 F.4th at 1205-06.  In short, nothing about the First Step Act's procedural amendment "indicates any intention on Congress's part" to "fundamentally change the nature of compassionate release." 4/5/23 Tr. 64-66 (Vice Chair Murray, delivering joint statement); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

> **6.    Finally, the Commission's Interpretation of Section 3582(c)(1)(A) as Empowering District Courts to Apply Nonretroactive Changes in Law to Particular Defendants is in Serious Tension with Basic Separation-of-Powers Principles.**

In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative

responsibility for establishing minimum and maximum penalties for every crime." *Mistretta*, 488 U.S. at 396.  "Congress generally cannot delegate its legislative power to another Branch," *id.* at 372, and "[w]hatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy," *Gore v. United States*, 357 U.S. 386, 393 (1958). The Commission does not pose a nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated to the Commission "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388.  Subsection (b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent when one considers the Commission's directive regarding its own retroactivity determinations.  Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the Sentencing Commission," and Sentencing Guidelines § 1B1.10 identifies particular Guidelines amendments that the Commission has elected to make retroactive. *See* U.S.S.G. § 1B1.10(a), (d).  In subsection (b)(6), the Commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a

sentence reduction.  U.S.S.G. § 1B1.13(b)(6); *see* 88 Fed. Reg. at 28,259.  The Commission accordingly precluded courts from using compassionate release as an end-run around the Commission's own determinations concerning the retroactive application of its Guidelines amendments.  But by permitting other changes in law, including a statutory change that Congress explicitly declined to make retroactive, to qualify, the Commission declined to afford the same respect to Congress's retroactivity determinations.  That counterintuitive result cannot be squared with the Commission's statutory authority.  *See, e.g.*, *LaBonte*, 520 U.S. at 757 (the Commission "must bow to the specific directives of Congress").

Indeed, the separation of powers concerns are particularly apparent with respect to Spradley's invocation of Section 401 of the First Step Act as grounds for a reduction.  In the same statute in which Congress amended Section 3582(c)(1)(A) to permit defendants to directly file sentence-reduction motions, Congress made the deliberate choice not to make Section 401 applicable to a defendant who was sentenced before the First Step Act's enactment.  Congress specified that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment." § 401(c), 132 Stat. 5221.  Any disparity between Spradley's sentence and the sentence he would receive today thus is the product of deliberate congressional design with respect to Section 401 of the First Step Act (just as it is with respect to Section 403).  *Thacker*, 4 F.4th at 573 ("Interpreting § 403 to apply retroactively would unwind and

31

disregard Congress's clear direction that the amendment apply prospectively."). And there is no reason to think that "the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean[t] to use a general sentencing statute from 1984 to unscramble that approach." *Jarvis*, 999 F.3d at 444; *see Andrews*, 12 F.4th at 261 ("[W]e will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release. Such an interpretation would sow conflict within the statute.").

## IV. SPRADLEY SHOULD NOT RECEIVE COMPASSIONATE RELEASE UNDER U.S.S.G. § 1B13(b)(5)

### A. The Sentencing Commission Violated Its Congressionally Delegated Authority in Promulgating Subsection (b)(5)

As section III of this Response indicates, Congress enacted 18 U.S.C. § 3582(c)(1)(A)(i) as a narrow exception to the general rule that a federal court may not modify a term of imprisonment once it has been imposed.  In that vein, this statute permits a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant the sentencing reduction.  Congress then directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentencing reduction, including *the criteria to be applied and a list of specific examples.*"  28 U.S.C. § 994(t).  Congress, therefore, required the Sentencing Commission to set forth concrete criteria that courts should apply in reducing

sentences pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and specific examples under which courts could reduce sentences pursuant to this statute.

The Sentencing Commission issued subsection 1B1.13(b)(5) pursuant to the authority delegated to it from Congress by 28 U.S.C. § 994(t).  Subsection 1B1.13(b)(5), however, does not comply with the specificity requirement imposed by 28 U.S.C. § 994(t).  Rather than imposing specific criteria or a list of specific examples, subsection (b)(5) permits a defendant to present "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).  Rather than providing a "list of specific examples," subsection (b)(5) declines to provide any examples whatsoever and allows a defendant to present "any other circumstance or combination of circumstances" in support of his claim.  U.S.S.G. § 1B1.13(b)(5).  Rather than providing "criteria to be applied," subsection (b)(5) allows a defendant to present any circumstance from an undefined and infinite list that is merely limited by the requirement that the circumstance is "similar in gravity" to other, properly enumerated circumstances listed in the section.  *Id.*  The Sentencing Commission made no effort to define the meaning of "similar in gravity" and, more importantly, provided no guidance for courts to determine whether a circumstance proffered by a defendant was "similar in gravity" to another circumstance listed in the guidelines provision.  In other words, as the dissenting commissioners argued

at the time of the enactment of subsection (b)(5), this subsection constitutes a "sweeping catch-all" provision that "abdicates the Commission's responsibility to articulate clear criteria by effectively delegating the Commission's authority to the courts...." 4/5/23 Tr. at 82.

Consequently, because subsection (b)(5) does not provide either "criteria to be applied" or "a list of specific examples" for what might constitute a permissible circumstance for granting compassionate release, this subsection fails to comply with the delegation authority granted to the Sentencing Commission by Congress in 28 U.S.C. § 994(t).   Because the Sentencing Commission exceeded its delegation authority, U.S.S.G. § 1B1.13(b)(5) does not constitute a permissible basis for relief for Spradley or any other defendant.

**B.      Furthermore, Interpreting Section 1B1.13(b)(5) to Allow Compassionate Release Based Upon a Change in Sentencing Law violates the Plain Text and Purpose of 18 U.S.C. § 3582(c)(1)(A) for the Reasons Articulated in *Thacker***

First, as applied to the facts of this case, interpreting section 1B13(b)(5) of the Sentencing Guidelines to permit the compassionate release of Spradley based upon a change in sentencing law violates the plain text and purpose of 18 U.S.C. § 3582(c)(1)(A) for the reasons articulated in *Thacker*. As noted in section III.A.2 of this Response, 18 U.S.C. § 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). Congress plainly instructed that any reason sufficient to overcome that general

34

principle must be "extraordinary and compelling."  18 U.S.C. § 3582(c)(1)(A)(i).
No reasonable interpretation of that phrase's text, particularly when considered
in light of the statute's structure and purpose, can encompass nonretroactive
or intervening changes in law.  The Seventh Circuit reached this opinion in
*Thacker,* holding that section 3582(c)(1)(A)'s clear meaning excluded
nonretroactive changes in sentencing law from constituting "extraordinary and
compelling" circumstances justifying compassionate release.  *Thacker,* 4 F.4th
at 574.  *Thacker* remains binding and, even if it intended to under section
1B1.13(b)(5) of the Sentencing Guidelines, the Sentencing Commission does
not have the authority to override the authoritative construction of the clear
meaning of statutory authority issued in *Thacker.*  See Neal, 516 U.S. at 290
(Sentencing Commission does not have authority to override judicial
interpretation of federal statute).  As a result, any argument that section
1B13(b)(5) could permit this court to override *Thacker* has no merit.

　　Second, for the reasons cited in section III.A.3 of this Response, the plain
language of 18 U.S.C. § 3582(c)(1)(A) prohibits courts from finding
nonretroactive changes to sentencing law, such as *Booker,* to constitute
extraordinary and compelling reasons for granting compassionate release.
Congress specifically decided not to apply *Booker* retroactively when it enacted
the First Step Act.  In making this decision, Congress adhered to the "ordinary
practice" in federal sentencing law and there is nothing "extraordinary" about
Spradley's sentence, as it reflected sentencing law in place at the time that he

was sentenced.  *See Thacker,* 4 F.4th at 574.  Any disparity between Spradley's sentence and the sentence that he might receive today constitutes the progress of congressional design, namely the conscious decision to not make *Booker* retroactive.  A nonretroactive change in the law cannot serve as either an "extraordinary" or a "compelling" reason for a sentence reduction in isolation or as adding to a package of such "reasons."  18 U.S.C. § 3582(c)(1)(A)(i).  Whether considered alone or in combination with other asserted factors, the possibility that a previously sentenced defendant might receive a lower sentence if he were sentenced today is a "legally impermissible" consideration for purposes of determining whether an extraordinary and compelling reason exists.  *Jenkins*, 50 F.4th at 1202 (internal quotation marks omitted); *see Jarvis*, 999 F.3d at 444 (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

Third, as noted in section III.A.4 of this Response, the context of section 18 U.S.C. § 3582(c) confirms that nonretroactive, intervening changes in law cannot provide an extraordinary and compelling basis for granting compassionate release.  In drafting 18 U.S.C. § 3582(c), Congress specifically authorized courts to modify a term of imprisonment where a defendant was sentenced based upon a sentencing range that has subsequently been lowered by the Sentencing Commission.  18 U.S.C. § 3582(c)(2).  Congress, however, did not provide either the Sentencing Commission or district courts with the

authority to revisit sentences based upon changes in decisional law.  This fact suggests that Congress did not intend for 18 U.S.C. § 3582(c) to reach decisional changes such as *Booker*.  Moreover, reducing sentences based upon decisional changes would undermine specific congressional design, as 28 U.S.C. § 2255 constitutes the "remedial vehicle" that Congress "specifically designed for federal prisoners' collateral attacks on their sentences.  *Jones,* 599 U.S. at 473; *see also Thacker,* 4 F.4th at 574.  Permitting defendants to treat a nonretroactive, decisional change such as *Booker* as an "extraordinary and compelling circumstance" as a basis for release under a separate statute would frustrate Congress' intent in enacting 28 U.S.C. § 2255 and allow defendants to evade the restrictions imposed by this statute simply by attaching a different label to their pleadings.

## V. REGARDLESS, UNDER THE CIRCUMSTANCES OF THIS CASE, SPRADLEY CANNOT ESTABLISH THAT HE RECEIVE AN UNUSUALLY LONG SENTENCE OR THAT CHANGES IN THE LAW WOULD PRODUCE A GROSSLY DISPARATE SENTENCE

Even if subsections 1B1.13(b)(5) and (b)(6) of the Sentencing Guidelines represented a valid exercise of the Commission's delegated authority, Spradley could not establish extraordinary or compelling reasons for a sentence reduction under that provision.

While Spradley has served over ten years of imprisonment, he cannot show that he received an "unusually long" sentence.   To be sure, subsection (b)(6) does not define what it means for a sentence to be "unusually long" for purposes of compassionate release.  Spradley's life sentence was the sentence

called for by the Sentencing Guidelines prior to *Booker*.  Spradley's sentence by definition could not be "unusually long" as compared to the sentences received by other, similarly situated defendants who were sentenced before *Booker*.

Perhaps the Sentencing Commission intends that courts assess whether a sentence is "unusually long" by comparison with federal sentences imposed for all federal crimes, and not just for the crime for which Spradley was sentenced. The Commission's most recent, publicly available data (as of February 2, 2024) reveals that the average length of imprisonment imposed for offenders in BOP custody was 145 months.[4]

Surely a sentence cannot be "unusually long" simply because it is greater than the average sentence; otherwise, the Commission (which presumably has access to its own statistics) could have expressly made an "above average" sentence the triggering condition for eligibility under subsection (b)(6).  Perhaps the Commission intends a comparison of a defendant's sentence based on the categories identified above that statistically group defendants based on the range of sentences they fall within.   But the statistical breakdowns are too crude to permit meaningful comparisons and would lead to illogical results. For example, while Spradley is within the group comprising only 2.5% of all inmates (those serving sentences of life), does that mean that his sentence should be deemed unusually long as compared to any inmate who falls within

---

[4]  https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/BOP_January2023.pdf (last visited 1/2/2024).

the 15% of inmates serving from 20 years or more?  As the latter group by definition would include inmates serving, say, 30-year sentences, using that comparative measure for deeming a sentence "unusually long" is nothing less than absurd.

Moreover, Spradley's life sentence is not "unusually long" given the advisory sentencing guidelines range in his case.  Spradley's advisory sentencing guidelines range if sentenced today would remain life imprisonment.  (Dkt. 956 ¶ 83.)  The life sentence falls within this sentencing guidelines range.  Spradley's sentence cannot be considered "unusually long" given the fact that his sentence remains within the applicable sentencing guidelines range.

For these reasons, the United States respectfully submits that Spradley's life sentence, is not "unusually long."

But even if Spradley's sentence is "unusually long," he must still show a "gross disparity" between his life sentence and the sentence likely to be imposed at the time he filed his motion for relief.  But the "gross disparity" standard articulated in subsection (b)(6) is not defined at all and therefore offers no reasonable standard to guide application of the new rule.  Common usage does not clarify matters.  The term "gross" means "glaringly noticeable," "flagrant," "unmitigated," or "rank."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1002 (2002).  By definition, the term is subjective and case-specific, as the Supreme Court has recognized in the

39

context of the Eighth Amendment and what qualifies as "grossly disproportionate." *Cf. Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) (acknowledging that Supreme Court case law "exhibit[s] a lack of clarity regarding what factors may indicate gross disproportionality"—the "precise contours of which are unclear"—but that the standard is reached "only in the 'exceedingly rare' and 'extreme' case"); *Solem v. Helm*, 463 U.S. 277, 290 n.17 (1993) ("[N]o single criterion can identify when a sentence is so grossly disproportionate that it violates the Eight Amendment.").

"Gross disparity" is just as vague. Ironically, the standardless inquiry required under subsection (b)(6) by its nature will almost certainly result in wildly disparate treatment of defendants. Courts inevitably will reach different conclusions as to whether a resulting disparity is "gross" and if so, how to craft appropriate relief. The United States sees no principled way to avoid these anticipated disparities, which would undermine the very purpose of the Sentencing Reform Act to minimize unwarranted sentencing disparities.

The Court should deny Spradley's motion for these reasons, if it finds *Thacker* inapplicable here.

## VI.    THE FACTORS CONTAINED IN 18 U.S.C. § 3553(a) INDEPENDENTLY PRECLUDE RELIEF

The factors set forth in 18 U.S.C. § 3553(a) likewise countenance against Spradley's release. The Court must first consider the nature and circumstances of the offense, along with the history and characteristics of the defendant. 18 U.S.C. § 3553(a). To recapitulate earlier arguments presented

in this Response, the offense involves Spradley's running a multi-million dollar drug conspiracy operation in Indianapolis.

The second factor to consider under § 3553(a) involves the need for the sentence to reflect the seriousness of the offense and to provide just punishment for the offense, the need to provide deterrence, and the need to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(2). Which as provided above, Spradley was the leader and organizer of a large scale drug conspiracy and money laundering organization that included an array of violence and ultimately murder.

The third factor to consider under § 3553(a) involves the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. § 3553(a)(6).  Reducing the defendant's sentence to 300 months' imprisonment in this case would represent an unwarranted windfall for the defendant and remove his sentence from beyond the pale of the sentences imposed for similarly situated defendants (in other words, as noted above, similarly situation defendants sentenced now would still have a guideline range of life).  While Spradley tries to compare himself to co-defendants in this case, Spradley's sentence includes the murder cross reference that others did not receive and some of those defendants were found responsible for smaller drug weights than Spradley, thus making them inapposite.  This comparison lacks merit.

Spradley has not met his burden of proving that his release would not

pose a danger to the community.

## CONCLUSION

The Court should deny the defendant's motion for compassionate

release.

Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

By:  *s/Bradley A. Blackington*
Bradley A. Blackington
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on **January 16, 2024**, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all ECF-registered counsel of record via email generated by the Court's ECF system. Parties may access this filing through the Court's system.


*s/Bradley A. Blackington*
Bradley A. Blackington
Assistant United States Attorney


Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Telephone:  (317) 226-6333