UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:98-cr-38-JMS-MJD-1 |
| | ) | |
| ANTHONY SPRADLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY GRANTING MOTION FOR COMPASSIONATE RELEASE**

Defendant Anthony Spradley has filed a motion seeking compassionate release under § 603

of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkt. 256. For the

reasons explained below, his motion is **GRANTED**.

**I.**
**Background**

In 1999, a jury convicted Mr. Spradley of: (1) one count of conspiracy to possess with

intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) two

counts of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(i)(A)(B)

and (h); (3) six counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B); and (4) three

counts of engaging in monetary transactions involving criminally derived properties, in violation

of 18 U.S.C. § 1957. Dkt. 44-1. The jury also acquitted Mr. Spradley of charges alleging that he

murdered a government informant. *See United States v. Thompson*, 286 F.3d 950, 956 (7th Cir.

2002). The U.S. Court of Appeals for the Seventh Circuit described the underlying facts as follows:

> Defendants Willie Boddie, Stephanie Johnson, Dennis Jones, Anthony Spradley,
> Anthony Thompson, Ellis Walker, and Mark White were charged with crimes
> arising out of their participation in a large, Indianapolis-based drug conspiracy. The
> conspiracy reigned from 1992 to 1997 and involved the trafficking of hundreds of
> kilograms (kilos) of cocaine, the accumulation and laundering of substantial profits,

and two short-lived business pursuits. The conspiracy seemed invincible until November 1996, when Marcus Willis, working on behalf of law enforcement officials, arrived on the scene. He worked for law enforcement for approximately eight months (through June of 1997) until he was murdered in one of the defendant's vehicles. Not long after his murder, charges were filed against each of the defendants and several others not part of this appeal. . . .

At trial, the government relied heavily on the testimony of several coconspirators who agreed to cooperate with the government in exchange for leniency. . . . As to the Marcus Willis murder, the alleged eye-witnesses, including unindicted coconspirator William Cox and defendant Mark White, could not agree on who actually murdered Willis and neither of their stories could be corroborated. We assume that this inconsistency led the jury to acquit Spradley, Jones, and White of the murder-related charges.

*Id.*

At sentencing, the District Court[1] concluded that the conspiracy trafficked in more than five kilos of cocaine and that the murder cross reference in § 2D1.1(d)(1) of the Sentencing Guidelines applied to Mr. Spradley and two of his co-defendants, including Mr. White. *Id.* The District Court also applied a 4-point leadership enhancement in determining the guidelines range for Mr. Spradley's sentence; it did not apply that enhancement in determining the guidelines range for Mr. White's sentence. Dkt. 230 at 16–19 (presentence investigation report detailing guidelines calculation for Mr. Spradley).[2] Together, these decisions meant that Mr. Spradley's guidelines range for imprisonment was life. Dkt. 230 at 23. At the time, the guidelines were binding, which meant that the District Court was required to sentence Mr. Spradley to life in prison.

Accordingly, Mr. Spradley was sentenced to life in prison on the drug conspiracy count, concurrent 20-year sentences on the money laundering counts, and concurrent 10-year sentences

---

[1] The undersigned did not preside over Mr. Spradley's trial or sentence him and did not become involved in the case until 2017.

[2] For information about how Mr. White's guidelines were calculated when he was resentenced, *see United States v. White*, No. 1:98-cr-38-JMS-MJD-03, dkt. 162 at 17–18 (S.D. Indiana) (presentence investigation report).

on the monetary transaction counts. Dkt. 44-1 at 3. Mr. White also received a life sentence and a

concurrent 20-year sentence. On direct appeal, the Seventh Circuit found that the District Court

erred in applying the murder cross reference to Mr. White, but it affirmed application of the murder

cross reference to Mr. Spradley, explaining:

> The district court found that Spradley knew Willis had been murdered to keep him
> from relaying any more information to law-enforcement authorities. It based its
> findings, in part, on evidence that Spradley knew about Willis's informant activities.
> Coconspirator Keith Cork testified at trial that several days before Willis's murder,
> he and Spradley confronted Willis with the rumors that he had been talking to the
> police. Cork's testimony was corroborated by a statement to the same effect made
> to police on June 20, 1997, approximately ten days before the murder. In addition,
> Cork testified that Spradley, in a meeting about Willis's informant activities
> attended by several conspiracy members, said that he would not let anyone hurt
> them.
>
> We believe this evidence sufficiently supports the conclusion that it was reasonably
> foreseeable to Spradley that Willis would be murdered with malice aforethought.
> Spradley knew that Willis was likely to be murdered in an attempt to prevent him
> from further exposing the conspiracy, which satisfies the test of reasonable
> foreseeability. Therefore the district court did not err by applying the First-Degree
> Murder Guideline to Spradley.

*Thompson*, 286 F.3d at 959. Thus, the Seventh Circuit affirmed the life sentence that Mr. Spradley

received. On remand, the District Court resentenced Mr. White to 480 months of imprisonment.

*United States v. White*, 406 F.3d 827, 831 (7th Cir. 2005). That sentence was affirmed on appeal,

after the District Court confirmed that it would have sentenced Mr. White to 480 months even if it

had known that sentencing guidelines were not mandatory. *United States v. White*, 155 F. App'x

901, 902–03 (7th Cir. 2005).

Another co-defendant, Mr. Boddie was sentenced to life imprisonment in 1999. *United*

*States v. Boddie*, 1:98-cr-00038-JMS-MJD, dkt. 92 (S.D. Ind. 1999). Although Mr. Boddie had

been assigned a criminal history category of I, the weight of drugs attributed to him, among other

factors, meant that his, then mandatory, guideline range for imprisonment was life. *Boddie*, dkt.

193 at 16–17, 21. In 2021, Mr. Boddie moved for compassionate release arguing that his increased risk of severe illness or death from COVID-19 created an "extraordinary and compelling reason" justifying his compassionate release. *Boddie*, Dkt 177. The Court granted his motion finding that he had successfully demonstrated extraordinary and compelling reasons for release. *Boddie*, dkt. 199. Mr. Boddie was released from the BOP on January 26, 2021, https://www.bop.gov/inmateloc/ (last visited April 16, 2024), after having served approximately 21 years, *see Boddie*, dkt. 193 at 1. There was no appeal.

Mr. Spradley filed his first Motion for Compassionate Release in 2021, dkt. 214, which the Court denied, dkt. 234. Mr. Spradley has now filed his second Motion for Compassionate Release, in which he argues that he establishes extraordinary and compelling reasons for compassionate release because: (1) a change in the law has created a gross disparity between the sentence he received and the sentence he would receive today; and (2) his sentence is unusually long and is disproportionately long compared to his co-defendants' sentences. Dkt. 256 at 7, 14. The United States has filed an opposition to the motion, dkt. 260, and Mr. Spradley filed a reply, dkt. 261, and a supplemental submission, dkt. 262. After, the Court ordered further supplemental briefing, dkt. 263, the United States filed an additional response, dkt. 265, and Mr. Spradley filed a supplemental reply, dkt. 272, and a notice of supplemental authority, dkt. 273. The motion is now ripe for the Court's consideration.

## II.
## Legal Background

Prior to 1984, "the Federal Government employed in criminal cases a system of indeterminate sentencing" with wide sentencing boundaries for trial judges who exercised "almost unfettered discretion" *Tapia v. United States*, 564 U.S. 319, 323 (2011) (quoting *Mistretta v. United States,* 488 U.S. 361, 363 (1989)). This model fell into disfavor due to doubts that prison

programs were able to rehabilitate offenders and because of large sentencing disparities between similarly situated defendants. *Id.* at 324.

These concerns led Congress to enact the Sentencing Reform Act of 1984, "overhaul[ing] federal sentencing practices." *Id.* at 325. The Sentencing Reform Act established the United States Sentencing Commission, which would promulgate sentencing guidelines that would replace indeterminate sentencing and parole with "a range of determinate sentences for categories of offenses and defendants." *Id.* (quoting *Mistretta,* 488 U.S. at 368). Congress also specified that a "court may not modify a term of imprisonment once it has been imposed" with certain exceptions. 18 U.S.C. § 3582(c). One such exception allowed a court to "reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A), (A)(i). As enacted in 1984, the Sentencing Reform Act permitted such reduction only "upon motion of the Director of the Bureau of Prisons." 18 U.S.C. § 3582(c)(1)(A) (Effective: Nov. 2, 2002 to Dec. 20, 2018). These motions are sometimes referred to as "compassionate release" motions because defendants often use them to seek a sentence reduction that would result in immediate release.

Congress also instructed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of" these sentence reductions. 28 U.S.C. § 994(a)(2). Accordingly, the Sentencing Commission promulgated U.S.S.G § 1B1.13 describing circumstances under which a court may find an extraordinary and compelling reason for a sentence reduction. Later, Congress amended § 3582(c)(1)(A)(i) as part of the First Step Act of 2018. This amendment, for the first time, permitted motions for a sentence reduction based on extraordinary and compelling reasons to be filed by a defendant. 18 U.S.C. § 3582(c)(1)(A) (Effective: December

21, 2018). Shortly after the enactment of the First Step Act, the Sentencing Commission lost its quorum, which it did not regain until 2022, and was unable to amend § 1B1.13 during that time. *Sentencing Guidelines for United States Courts*, 88 FR 28254-01.

During that period, the Seventh Circuit, along with nearly all other circuits, determined that § 1B1.13 was inapplicable to motions by prisoners and that it addressed only motions filed by the Director of the Bureau of Prisons ("BOP") "because the Sentencing Commission has not updated its policy statements to implement the First Step Act." *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *compare United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (holding § 1B1.13 did not apply to prisoner filed motions); *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) (same); *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021) (same); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (same); *United States v. Shkambi*, 993 F.3d 388, 392-93 (5th Cir. 2021) (same); *United States v. Jones*, 980 F.3d 1098, 1110 (6th Cir. 2020) (same); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) (same); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021) (same); *United States v. Long*, 997 F.3d 342, 359 (D.C. Cir. 2021) (same), *with United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) (holding that § 1B1.13 governed all motions under § 3582(c)(1)(A)). This left the parameters of an "extraordinary and compelling reason for release" within the District Judges' discretion constrained by the Seventh Circuit's warning that "a judge who strikes off on a different path [from § 1B1.13 as a working definition of extraordinary and compelling reasons] risks an appellate holding that judicial discretion has been abused." *Gunn*, 980 F.3d at 1180.

Another circuit split arose during this time over whether a non-retroactive change in the law may constitute an extraordinary and compelling reason for release. The Seventh Circuit held that such a change cannot. *See United States v. Thacker*, 4 F.4th 569, 575 (7th Cir. 2021) (holding

that a non-retroactive change to statutory mandatory minimum sentence was not extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i) and that a district court cannot consider such a change, whether alone or in combination with any other factor, when determining whether a defendant has established extraordinary and compelling reasons potentially warranting a sentence reduction). As summarized by the Seventh Circuit:

> When deciding whether "extraordinary and compelling reasons", 18 U.S.C. § 3582(c)(1)(A)(i), justify a prisoner's compassionate release, judges must not rely on non-retroactive statutory changes or new judicial decisions. . . . There's nothing "extraordinary" about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255.

*United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (cleaned up); *see also United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023) (quoting *United States v. Brock*, 39 F.4th 462, 466 (7th Cir. 2022) ("Judicial decisions, whether characterized as announcing new law or otherwise, cannot alone amount to an extraordinary and compelling circumstance allowing for a sentence reduction")). In so holding, the Seventh Circuit sided with a slight majority of circuit courts. *Compare United States v. Andrews*, 12 F.4th 255, 260–62 (3d Cir. 2021) (holding that non-retroactive changes in law are not permissible considerations); *United States v. McMaryion*, 64 F.4th 257, 259–60 (5th Cir. 2023) (same); *United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022) (en banc) (same); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022) (same); and *United States v. Jenkins*, 50 F.4th 1185, 1198, 1198 (D.C. Cir. 2022) (same), *with Ruvalcaba*, 26 F.4th at 16, 26–28 (holding that non-retroactive changes in sentencing law may be considered in light of a defendant's particular circumstances); *McCoy*, 981 F.3d at 286–88 (same); *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (same), and *United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (same).

The Sentencing Commission regained its quorum in 2022, and promulgated amendments to § 1B1.13. *See* https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last visited April 16, 2024). Among these changes were two additional subsections, (b)(6) and (c), which "operate together to respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons." *Id.* Subsection (b)(6) provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b)(6). This provision is limited by subsection (c) as follows:

> Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

§ 1B1.13(c).

The Commission submitted this change among other amendments to Congress on April 27, 2023. *See* https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last visited April 5, 2024). Congress did not act to modify or disapprove of these amendments, and they become effective on November 1, 2023. *Id.*; *see* 28 U.S.C. § 994(p).

## III.
## Discussion

To summarize current law governing compassionate release motions, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the Sentencing Commission promulgated the current guidelines interpreting § 3583(c)(1)(A)(i), the Seventh Circuit held that a district court has broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

### A. Extraordinary and Compelling Reasons

Mr. Spradley relies on § 1B1.13(b)(6) to establish extraordinary and compelling reasons for release. The Government argues that the holdings of *Thacker* and its progeny establish that the Sentencing Commission exceeded its authority in promulgating § 1B1.13(b)(6). Dkt. 260 at 13–23. The Government further argues that this provision is invalid because it undermines Congress's statutory scheme for sentence reductions. *Id.* at 23-29. Finally, the Government contends that § 1B1.13(b)(6) is invalid because it creates tension with separation of powers principles. *Id.* at 29-

32. Mr. Spradley replies that *Thacker* need not survive given subsequent positions taken by the Seventh Circuit. Dkt. 272 at 6.

### 1. *Validity of § 1B1.13(b)(6)*

The first question the Court must answer in addressing Mr. Spradley's motion is whether the Sentencing Commission exceeded its authority in promulgating § 1B1.13(b)(6). The Court concludes that the Commission did not extend beyond its authority in promulgating § 1B1.13(b)(6) for several reasons, as discussed separately below.

### a. Potential conflict with *Thacker* and its progeny

First, § 1B1.13(b)(6) does not run afoul of *Thacker* and its progeny. In *Thacker*, the Seventh Circuit held that "the discretion conferred by § 3582(c)(1)(A) does not include authority to reduce a mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling circumstance warranting a sentencing reduction." 4 F.4th at 574. The Court reasoned that "there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district imposed for particular violations of a statute." *Id.* Later Seventh Circuit opinions following *Thacker* reiterated the position that law changes are not extraordinary. *E.g., King*, 40 F.4th at 596. However, *Thacker* and its progeny were premised on the fact that the Sentencing Commission had not yet released guidance as to prisoner-initiated compassionate release motions. *Thacker*, 4 F.4th 573–74 ("[U]ntil the Sentencing Commission updates its policy statement to reflect prisoner-initiated compassionate release motions, district courts have broad discretion to determine what else may constitute 'extraordinary and compelling reasons' warranting a sentence reduction."). The Seventh Circuit did not have the benefit of the Sentencing Commission's analysis of the statute and did not consider the question of whether the Sentencing Commission's determination that the circumstances presented by

§ 1B13.1(b)(6) may be extraordinary and compelling is a *reasonable* interpretation of statute, which is the key question. For that reason, the Court does not find that *Thacker* precludes a finding that the Sentencing Commission's guidance in § 1B1.13(b)(6) was a reasonable interpretation of the statute.

This conclusion is supported by events that occurred after the Seventh Circuit issued its opinion in *Thacker*. Since that time, the authority of the Sentencing Commission to promulgate § 1B1.13(b)(6) has been recognized by both the Department of Justice and the Seventh Circuit. Specifically, on multiple occasions, the Government opposed petitions for writ of certiorari to resolve the circuit split on the issue of whether changes in law can be considered extraordinary and compelling reasons for a sentence reduction on the grounds that the Sentencing Commission should be entrusted with resolving the split, including in successfully opposing granting certiorari in *Thacker*. Memorandum For the United States in Opposition to Grant of Certiorari, *Thacker v. United States*, No. 21-877, 2022 WL 467984 (U.S. Feb. 14, 2022); *see also, e.g.,* Brief For the United States in Opposition to Grant of Certiorari, *Jarvis v. United States*, No. 21-568, 2021 WL 5864543 (U.S. Dec. 8, 2021); Memorandum For the United States in Opposition to Grant of Certiorari, *Watford v. United States*, No. 21-551, 2021 WL 5983234 (U.S. Dec. 15, 2021); Memorandum For the United states in Opposition to Grant of Certiorari, *Williams v. United States*, No. 21-767, 2022 WL 217947 (U.S. Jan. 24, 2022).

In addition, after the *Thacker* opinion was issued but prior to the enactment of § 1B1.13(b)(6), the Seventh Circuit expressed hope that either the Sentencing Commission or the Supreme Court would resolve the split. *United States v. Williams*, 65 F.4th 343, 349 (7th Cir. April 13, 2023). It also recognized that the Supreme Court may choose not to take up the issue, which would ultimately leave the issues up to the Sentencing Commission. *Id.* ("We have no crystal ball,

. . . All we can say is that the issue is teed up, and either the Commission or the Court (we hope) will address it soon."). Following the enactment of subsection (b)(6), the Seventh Circuit has also recognized the newly enacted rule on no fewer than two occasions. *United States v. Williams*, 2023 WL 8868502, at *1 n.1 (7th Cir. Dec. 22, 2023) ("We acknowledge that the Sentencing Commission's proposed amendments to the Guidelines took effect on November 1, 2023. As relevant to Williams's motion, U.S.S.G. § 1B1.13(b)(6) permits courts to consider a change in the law. . . . [T]he new guideline does not alter our analysis here."); *United States v. Moore*, 2024 WL 890003, at *1 (7th Cir. Mar. 1, 2024) ("[W]ith one exception . . . claims about the validity of the original conviction or sentence cannot count toward a finding of extraordinary and compelling circumstances.  . . . The exception arises under the Sentencing Commission's 2023 amendments to the Guidelines, which permits some defendants to seek early release based on intervening changes in constitutional or criminal law."). This approach is consistent with the approach of several out-of-circuit district courts that have declined to follow their *Thacker*-analogous circuit holdings in light of the newly amended guidelines.[3] *See, e.g.*, *United States v. Capps*, 2024 WL 880554, at *7

---

[3] District courts in this circuit have not, to date, granted compassionate release in reliance on § 1B1.13(b)(6). *See United States v. Garza*, 2023 WL 7298975, at *1 (N.D. Ind. Nov. 6, 2023) (holding that the defendant is unable to pursue his compassionate release motion in light of *Thacker* without acknowledgment of the 2023 guidelines amendments); *United States v. Black*, 2024 WL 449940, at *12 (N.D. Ill. Feb. 6, 2024) (holding that the court could not defer to the Sentencing Commission's interpretation of statute and must apply *Thacker*). Recognizing that the issue is a close one, the Court respectfully disagrees with these opinions. Moreover, the Third Circuit has recently stated that it has "reaffirmed that nonretroactive changes in sentencing laws are not, by themselves, extraordinary and compelling reasons warranting sentence reduction." *United States v. Kramer*, 2024 WL 313389, at *3 (3d Cir. Jan. 26, 2024). However, this statement is dicta, and the Third Circuit has also acknowledged that it may later address the amended guidelines effect on the validity of its prior holding prohibiting a district court from such a conclusion where a case presents the question directly. *United States v. Stewart*, 86 F.4th 532, 535 (3d Cir. 2023).

(E.D. Mo. Jan. 31, 2024); *United States v. Brown*, 2024 WL 409062, at *6 (S.D. Ohio Feb. 2, 2024); *United States v. Bricker*, 2024 WL 934858, at *2 (N.D. Ohio Mar. 5, 2024); *United States v. Skeeters*, 2024 WL 992171, at *1 (E.D. Pa. Mar. 7, 2024).

The role of the Sentencing Commission in addressing circuit splits is recognized both by statute and by the Supreme Court. Within the statutory framework empowering the Sentencing Commission, Congress charged the Commission with the duty to "periodically . . . review and revise . . . the guidelines." 28 U.S.C. § 994. The Supreme Court has recognized that, in doing so, "Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Braxton v. United States*, 500 U.S. 344, 348 (1991). This is precisely what the Commission did here. The Commission recognized their duty to "respond to a circuit split" of which *Thacker* was a part and determined it, rather than the Supreme Court, was the proper body for doing so in light of the Department of Justice's opposition to the Supreme Court taking up this question. Amendments to the Sentencing Guidelines, https://www.ussc.gov /sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf at 5-6 (Nov. 2023). Particularly given the Seventh Circuit's post-*Thacker* statements, *Thacker* and its progeny cannot be read to mean that the Seventh Circuit jettisoned the courts' historic deference

to the Sentencing Commission before it even had the benefit of the Sentencing Commission's interpretation of the statute.

For all of these reasons, the Court concludes that the holdings of *Thacker* and its progeny do not compel a finding that the Commission exceeded its authority in adopting §1B1.13(b)(6).

 b. Reasonable interpretation

Having concluded that *Thacker* and its progeny do not mean that § 1B1.13(b)(6) is *per se* an unreasonable interpretation of the statute, the Court considers whether the Sentencing Commission's interpretation is reasonable and concludes that it is. Section 1B1.13(b)(6) permits a finding of an extraordinary and compelling reason for release only where (1) the defendant has served at least 10 years, (2) the sentence is "unusually long," and (3) a change in the law has produced a "gross disparity" between the sentence being served and the sentence likely imposed at the time of the motion. Moreover, no sentence reduction may be granted without "full consideration of the defendant's individualized circumstances." *Id.* These narrowing provisions reflect the Commission's "tailored approach" toward sentence reductions based on a change in the law. *Amendments to the Sentencing Guidelines* at 6 (Nov. 2023)[4]. That is, the Sentencing Commission did not categorically open up the possibility of relief to any defendant based on any nonretroactive change to the law. Such changes must produce a "gross disparity" for relief to be granted and, even then, relief is available only to a subset of defendants with long sentences who have already spent a decade incarcerated. *Id.* Notably, fewer than 12% of federal offenders were sentenced to a term of 10 years or longer between 2013 and 2022, *id.*, which means that § 1B1.13(b)(6) potentially affords relief to a small proportion of inmates in the BOP and supports

---

[4] *Available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf.

the conclusion that it applies only in extraordinary circumstances. The Court agrees that there is nothing extraordinary about a change in the law alone, but the Commission's interpretation of the statute is reasonable because such a change may become extraordinary and compelling when combined with a long sentence, of which a decade long portion has been served, and there is large difference between the sentencing scheme the defendant faced and the one he would face if sentenced today.

        c.  <u>Statutory scheme</u>

Further, § 1B1.13(b)(6)'s reasonableness is not undermined by any conflict with either the purposes of the Sentencing Reform Act or with other statutory vehicles that may result in a sentence reduction including 18 U.S.C. § 3582(c)(2) and 28 U.S.C.A. § 2255 because of these same narrowing provisions. As stated above, one of the purposes of the Sentencing Reform Act was Congress's distaste for unwarranted sentencing disparities. S. Rep. No. 98-225, at 52 (1983) (Senate Report)) ("A primary goal of sentencing reform is the elimination of unwarranted sentencing disparity.") Section 1B1.13(b)(6) functions to eliminate similar disparities that arise across time.

Rather than working at cross purposes, § 1B1.13(b)(6) allows § 3582(c)(1)(A) to work together with § 3582(c)(2) reduce sentences. Section 3582(c)(2) permits the court to lower a sentence based on retroactive changes to the guidelines. This allows reductions (after individualized considerations) when a guidelines change is retroactive, which contrasts with § 3582(c)(1)(A) in allowing reductions where changes in the law are not retroactive only under exceptional and rare circumstances (and also after considering individualized considerations). Section 1B1.13(b)(6) thus does not trample on (c)(2) as a procedural vehicle to render all changes in the law retroactive because only a small number of defendants, those who fit within the

narrowing provisions, qualify if the change affecting their sentence is not retroactive. Similarly, though the Seventh Circuit expressed concern that deciding that changes in law could create extraordinary and compelling reasons for relief would "create[] tension with the . . . post-conviction relief in 28 U.S.C. § 2255," this concern arose before the promulgation of § 1B1.13(b)(6)'s tailored approach. *Thacker*, 4 F.4th at 574. The narrowing provisions address this concern by removing the possibility of relief from the vast majority of federal defendants.

Lastly, § 1B1.13(b)(6) fits squarely within the legislative judgments and structures created by Congress. First, Congress instructed the Sentencing Commission to describe circumstances in which extraordinary and compelling reasons for release exist and created one specific carveout prohibiting a court from finding the rehabilitation of a defendant alone to be an extraordinary and compelling reason for release. 28 U.S.C. § 994(t) ("The Commission, . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Congress made no other prohibitions on what may constitute extraordinary and compelling reasons for release. Congress could have issued a prohibition on changes in the law creating extraordinary and compelling reasons for release but did not do so and chose to leave such judgments to the Commission itself. *See Concepcion v. United States*, 597 U.S. 481, 483 (2022) ("Congress has shown that it knows how to direct sentencing practices in express terms."). The Commission's judgment that nonretroactive changes in law may constitute extraordinary and compelling reasons for release fits within the discretion given to them by Congress.

    d.  <u>Separation of Powers</u>

Finally, finding § 1B1.13(b)(6) to be valid does not implicate concerns that the Sentencing Commission—an independent agency in the judicial branch—has usurped Congress's legislative

determinations regarding retroactivity. Section 1B1.13(b)(6) was itself approved by Congress. All amendments or modifications to the sentencing guidelines must be submitted to Congress and do not go into effect until at least 180 days have passed without modification or disapproval by Congress. 28 U.S.C. § 994(p). For that reason, Congress's tacit approval is required for any modification to the sentencing guidelines. *See id.* Section 1B1.13(b)(6) was submitted to Congress on April 27, 2023. https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last visited April 16, 2024). Congress took no action to modify or disprove of the amendment, and § 1B1.13(b)(6) went into effect on November 1, 2023. *Id.* There are no separation of powers concerns where Congress itself approved the promulgation of this rule through the legislatively created structure for ensuring Congress did not disapprove of any sentencing guidelines amendments.

For all of these reasons, the Court holds that the Sentencing Commission did not exceed its authority in promulgating § 1B1.13(b)(6), and the provision in valid even in light of *Thacker.*

### 2. *Applicability to Mr. Spradley*

Mr. Spradley relies on § 1B1.13(b)(6) and contends that the disparity between the sentence he received and the sentence he might receive if he was sentenced today establishes an extraordinary and compelling reason to release him. Specifically, he argues that he was sentenced to life imprisonment in accordance with then-mandatory sentencing guidelines, and that, after *United State v. Booker*, 543 U.S. 220 (2005), the guidelines are no longer mandatory, and the Court would be permitted today to consider a downward variance from the sentencing guidelines. Dkt. 256 at 14.

There is no dispute that Mr. Spradley has served more than 10 years of his sentence. *See* dkt. 230 at 4. There can also be no doubt that Mr. Spradley's life sentence is unusually long as few

federal offenders have received life sentences in recent years. *See* U.S. Sent'g Commission, "Life Sentences in the Federal System," at 5 (July 2022) ("Life sentences have remained a very small proportion of the federal offender population over the last 20 years (between 0.1% and 0.5%)").

The Court also finds that there exists a gross disparity between the sentence Mr. Spradley is serving and the sentence he would receive if sentenced today. Mr. Spradley's sentencing guidelines range would still be life imprisonment if he were sentenced today, but that range would not be mandatory. Thus, to determine the sentence he would receive today, the Court must analyze the § 3553(a) sentencing factors. Based upon the analysis of these factors below and noting that Mr. Spradley's co-defendant Mr. White received a 40-year sentence and another co-defendant who received a life sentence has already been released, the Court determines that the sentence Mr. Spradley would likely receive today if sentenced today is 480 months. Because Mr. Spradley is 55 years old and has served more than 25 years in the BOP, dkt. 230 at 4, such a sentence gives Mr. Spradley hope of release from prison where a life sentence permits no such hope. The Court determines the difference between a determinate sentence which would likely one day end and the permanence of a life sentence to be a "gross disparity" under the guidelines. For this reason, Mr. Spradley has met each element of § 1B1.13(b)(6) and has shown that an extraordinary and compelling reason for a sentence reduction exists.

**B. Danger to any Other Person or the Community**

The Sentencing Guidelines specify that compassionate release is appropriate *only* where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Section 3142(g), which sets out the factors the court must consider in determining whether a defendant should be detained pending trial, guides

the court's release determination under post-incarceration circumstances as well. It is a familiar litany to every federal district court judge.

> **(g) Factors to be considered**.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>> **(2)** the weight of the evidence against the person;
>> **(3)** the history and characteristics of the person, including—
>>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Spradley's crimes were without a doubt very serious. He was a leader in a large-scale conspiracy to distribute cocaine in the Indianapolis, Indiana, area and was personally responsible for the distribution of large quantities of methamphetamine. Dkt. 904 at 5–6. His criminal history is, however, extremely limited. He has just a single prior conviction for gambling in 1990 for which he received a $2 fine. Dkt. 230 at 19. Moreover, Mr. Spradley's criminal activity related to this case will be several decades behind him by the time he is released. For these reasons, the Court finds that Mr. Spradley's release after the completion of a 40-year sentence from incarceration followed by five years of supervised release will not pose a significant threat to the safety of any person or the public.

### C. Section 3553(a) Factors

Mr. Spradley asserts that the § 3553(a) factors weigh in favor of his release. Dkt. 256 at

17–23. The Government contends that the § 3553(a) factors weigh against release. Dkt 265 at 9–

10.

Section 3553(a) provides:

**(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>     **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>     **(2)** the need for the sentence imposed—
>>          **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>          **(B)** to afford adequate deterrence to criminal conduct;
>>          **(C)** to protect the public from further crimes of the defendant; and
>>          **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>     **(3)** the kinds of sentences available;
>     **(4)** the kinds of sentence[s] and the sentencing range established for—
>>          **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
>     **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
>     **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>     **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Initially, the Court notes that *Booker* was decided based on principles of constitutional law.

*Booker*, 543 U.S. at 244. The fact that Mr. Spradley was sentenced under what has been deemed

an unconstitutionally restrictive sentencing structure calls into question the reasonableness of his

life sentence, and the Court is obliged to apply the sentencing guidelines in their proper advisory

capacity.

20

Moreover, Mr. Spradley's life sentence was largely driven by the Court's finding of an offense level increase for murder cross reference in § 2D1.1(d)(1) despite his acquittal of murder charges. The Court takes notice that the Sentencing Commission has recently sought comment on a set a proposed amendments to the guidelines addressing the use of acquitted conduct for purposes of determining a sentence. https://www.ussc.gov/guidelines/amendments/proposed-2024-amendments-federal-sentencing-guidelines (last visited April 17, 2024). The Commission presented three options for the amendment which would either (1) prohibit consideration of acquitted conduct for the purposes of determining the guidelines range, (2) permit a downward departure where acquitted conduct "has a disproportionate impact in determining the guideline range relative to the offense of conviction," or (3) prohibit use or consideration of acquitted conduct for the purposes of determining the guidelines range unless established by clear and convincing evidence. *Id.* Though the Court acknowledges that the Commission has not yet adopted, let alone submitted and enacted, any such amendment, the Court supports the Commission's consideration of these possible amendments and finds that the fact that Mr. Spradley was acquitted of the conduct that undergirded his life sentence to be a relevant consideration with regard to whether early release is warranted.

The Court also considers the need to avoid an unwarranted sentencing disparities between Mr. Spradley and his co-defendants to be compelling. Mr. Spradley's co-defendants have either already received lower sentences (Mr. White) or have released from BOP despite a sentence to life imprisonment after just 21 years (Mr. Boddie). The difference between the co-defendants' sentences and Mr. Spradley's is stark and unwarranted, and this difference counsels strongly in favor of early release.

Weighing against Mr. Spradley's request for outright release, as stated, his crimes were serious. In addition, he has a disciplinary record that includes multiple violations while in BOP including possession of a dangerous tool in 2021. Dkt. 265-1 at 1. However, as stated above, Mr. Spradley's criminal record is extremely limited, and he has already served more than 25 years in the BOP for his crimes, which is a significant punishment. And, as the Court noted in its prior order denying compassionate release, Mr. Spradley has engaged in an impressive effort towards rehabilitation. He has engaged in a substantial number of educational programs while incarcerated. Dkt. 256 at 54–55. Mr. Spradley has also maintained employment while incarcerated and participated in the Inmate Companion Program in the BOP. *Id.* at 57. Upon release, he will have the support of family and his community upon release, *id.* at 43–49, as well as multiple offers of employment if he were released. *Id.* at 41–42. The Court also finds that Mr. Spradley's engagement in restorative justice with Mr. Willis's father weighs in his favor. Mr. Willis's father has found some measure of healing through that process, and he has written a letter to the Court expressing that does not oppose Mr. Spradley's release. Dkt 256 at 27.

In light of these considerations, the Court finds that the § 3553(a) factors justify a reduction of Mr. Spradley's sentence but not a reduction to time served, as he requests. A 480-month sentence followed by a 5-year term of supervised release is sufficient but no greater than necessary to deter Mr. Spradley from further criminal conduct, reflect the seriousness of his offense, provide just punishment, promote respect for the law, to ensure the safety of the public from future crimes, and avoid unwarranted sentencing disparities.

**IV.**
**Conclusion**

Pursuant to 18 U.S.C. § 3582(c), the Court therefore finds that extraordinary and compelling reasons warrant a reduction of Mr. Spradley's sentence of imprisonment, that Mr. Spradley will not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his sentence reduction is consistent with the Sentencing Commission's applicable policy statements. The Court **GRANTS** Mr. Spradley's motion for compassionate release, dkt. [256], and **ORDERS** that Mr. Spradley's sentence of imprisonment be reduced to **480 months**. The previously imposed 5-year term of supervised release remains unchanged. The terms of supervised release stated in the Judgment imposed on December 8, 1999, also remain as previously imposed. *See* dkt. 44-1.

SO ORDERED.

Date: 4/18/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel